Docusign Envelope ID: 36C76A7E-D2A0-8AA2-828C-0771D6FC6EFC


Christine Kelly (209701)
THE ANIMAL LAW OFFICE
454 Las Gallinas Avenue #106 abm
San Rafael, CA 94903
Tele. 415-297-3109
Fax. 415-324-8086
christine@animalattorney.com

ATTORNEY FOR PLAINTIFFS SANTA PAULA ANIMAL RESCUE CENTER AND CLAIRE BIRGY, THE GUARDIANS OF CANINE COMPANION BRUCE

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| SANTA PAULA ANIMAL RESCUE CENTER, INC. AND CLAIRE BIRGY, THE GUARDIANS OF CANINE COMPANION BRUCE<br><br>Plaintiffs,<br>vs.<br><br>VENTURA COUNTY, VENTURA COUNTY ANIMAL SERVICES, CITY OF OXNARD AND DOES 1-10<br><br>Defendant | Case No.: 2:26-cv-05196-SPG-E<br><br>**VERIFIED FIRST AMENDED COMPLAINT AGAINST VENTURA COUNTY, VENTURA COUNTY ANIMAL SERVICES, and CITY OF OXNARD FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF**<br><br>**JURY TRIAL DEMANDED** |

**COME NOW, Plaintiffs Santa Paula Animal Rescue Center, Inc.** CLAIRE BIRGY, by and through their undersigned counsel, and for their Verified Complaint against Defendants VENTURA COUNTY, VENTURA COUNTY ANIMAL SERVICES, and CITY OF OXNARD, et al ("Defendants"), state to this Honorable Court as follows:

## INTRODUCTION

1. This is an action under 42 U.S.C. § 1983 to prevent Defendants from carrying out the irreversible destruction of Bruce without constitutionally adequate process as required by the Fourth, Fifth, and Fourteenth Amendments.

2. Plaintiffs do not bring this action as an appeal from the Ventura County Superior Court's April 15, 2026 dangerous-dog determination. Plaintiffs do not ask this Court to decide whether the Superior Court correctly determined that Bruce is legally "vicious" under California dangerous-dog law.

3. Plaintiffs instead assert independent federal civil-rights claims arising from Defendants' administrative and enforcement conduct, including the alleged failure to provide constitutionally adequate notice, disclosure of the evidence, opportunity to be heard, opportunity to present witnesses and evidence, opportunity to test the evidence, and adjudication of lawful non-destruction alternatives before Defendants execute a destruction order.

4. Plaintiffs further allege that the de novo hearing Defendants rely on as a cure did not itself provide constitutionally adequate process, did not review the separate Oxnard administrative proceedings, and did not adjudicate SPARC's retained rights. Where the County's procedure allows only one de novo review of a destruction order, that review cannot cure prior constitutional defects if it is itself constitutionally inadequate.

5. Plaintiff Claire Birgy has protected property and possessory interests in Bruce arising from her relationship with Bruce as his owner, guardian, keeper, and/or person from whom Bruce was taken and against whom the dangerous-dog and nuisance proceedings were pursued.

6. Plaintiff Santa Paula Animal Rescue Center, Inc. ("SPARC") has separate retained interests in Bruce arising from its rescue of Bruce, its adoption agreement, its contractual rights, its retained possessory, ownership, and/or reversionary inter-

ests, and its contract-based property rights, including the right to exclude unauthorized disposition or destruction inconsistent with those rights.

7. Defendants' administrative and enforcement process did not adjudicate SPARC's retained rights. Despite knowing or having reason to know of SPARC's interests, Defendants did not formally notice, serve, join, or hear SPARC as a rights-holder in the Oxnard administrative proceedings, the Ventura County Animal Services administrative proceeding, or the April 15, 2026 de novo hearing.

8. Nor were SPARC's rights adjudicated through Jean Marie Webster's personal appearance at the Ventura County Animal Services administrative hearing. Webster is a founding member and major benefactor of SPARC. She was not SPARC's president, chief executive officer, officer, attorney, or authorized legal representative, and her personal appearance did not make SPARC a party, waive SPARC's rights, or bind SPARC to the result of a proceeding in which SPARC was never formally noticed, served, joined, or heard.

9. The City of Oxnard proceedings and the Ventura County Animal Services proceedings were separate administrative proceedings. The April 15, 2026 de novo hearing arose from the Ventura County Animal Services administrative decision; it did not adjudicate SPARC's retained rights and did not review or cure alleged defects in the separate Oxnard administrative proceedings.

10. Plaintiffs allege that Defendants, acting under color of state law, used administrative and enforcement procedures that deprived and threaten to deprive Plaintiffs of protected property, possessory, contractual, reversionary, and contract-based property interests without constitutionally adequate process. Plaintiffs further allege that Defendants now seek to execute a destruction order before those federal rights are adjudicated.

11. Once Bruce is destroyed, Plaintiffs' property and possessory interests will be permanently extinguished, SPARC's retained contractual, reversionary, and

contract-based property rights will be destroyed, and no later process can restore the life taken. Plaintiffs therefore seek declaratory relief, injunctive relief, damages, attorney's fees, costs, and any other relief necessary to prevent Defendants from destroying Bruce without constitutionally adequate process and adjudication of Plaintiffs' federal rights.

## PARTIES

12. Plaintiff Claire Birgy is an individual residing in Ventura County, California. Birgy is Bruce's adopter, owner, guardian, keeper, and/or person with a protected property and possessory interest in Bruce.

13. Birgy was the person against whom certain administrative and judicial dangerous-dog proceedings were pursued. Birgy asserts federal constitutional claims arising from Defendants' seizure, continued detention, threatened destruction of Bruce, and alleged failure to provide constitutionally adequate process before depriving her of protected property and possessory interests.

14. Plaintiff Santa Paula Animal Rescue Center, Inc. ("SPARC") is a California nonprofit public benefit corporation recognized as tax-exempt under Internal Revenue Code section 501(c)(3).

15. SPARC rescued Bruce as a puppy and later adopted him to Birgy through SPARC's adoption process and written adoption agreement.

16. SPARC asserts retained contractual, possessory, ownership, reversionary, and/or contract-based property rights in Bruce arising from the adoption agreement, including the right to notice and an opportunity to protect its interests before Bruce is destroyed.

17. SPARC pleads its ownership, possessory, contractual, reversionary, and contract-based property rights in the alternative to the extent Defendants or any party disputes whether Birgy's ownership rights remained in effect, were relin-

quished, were forfeited, were impaired, were limited, or reverted to SPARC under the adoption agreement.

18. Defendant Ventura County is a public entity organized under the laws of the State of California. At all relevant times, Ventura County acted through its officials, employees, agents, departments, and/or designees in connection with the investigation, detention, administrative prosecution, and threatened destruction of Bruce.

19. Defendant Ventura County Animal Services ("VCAS") is the County agency, department, division, or operating entity responsible for animal services, animal control, animal sheltering, field services, detention, release, enforcement, and/or destruction decisions concerning Bruce.

20. At all relevant times, VCAS acted under color of state law and pursuant to authority delegated by Ventura County, including authority to investigate, detain, hold, process, and seek destruction of animals under County ordinances and California law.

21. Defendant City of Oxnard is a municipal corporation organized under the laws of the State of California.

22. At all relevant times, the City of Oxnard acted under color of state law through its officials, employees, agents, hearing officers, police department, animal safety unit, and/or other designees in connection with municipal administrative proceedings concerning Bruce.

23. Plaintiffs are informed and believe, and on that basis allege, that Defendants Ventura County, VCAS, and the City of Oxnard acted through official policies, customs, practices, procedures, decisions, or final policymaking authority in connection with the acts and omissions alleged in this complaint.

24. Plaintiffs are informed and believe, and on that basis allege, that Does 1 through 10 are individuals, entities, officials, employees, agents, designees, hearing

officers, policymakers, or other persons responsible in some manner for the acts and omissions alleged in this complaint. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

25. At all relevant times, each Defendant and Doe Defendant acted under color of state law and within the course and scope of their office, employment, agency, delegated authority, or official capacity, unless otherwise alleged.

## JURISDICTION AND VENUE

26. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs assert claims arising under the Constitution and laws of the United States, including 42 U.S.C. § 1983 and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

27. This Court also has jurisdiction under 28 U.S.C. § 1343 because Plaintiffs seek redress for the deprivation, under color of state law, of rights secured by the Constitution and laws of the United States.

28. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over any related state-law claims because those claims form part of the same case or controversy as Plaintiffs' federal claims.

29. Plaintiffs seek declaratory, injunctive, and other appropriate relief under 28 U.S.C. §§ 2201 and 2202, Federal Rule of Civil Procedure 65, 42 U.S.C. §§ 1983 and 1988, and the Court's equitable authority.

30. Venue is proper in the Central District of California under 28 U.S.C. § 1391(b) because Defendants reside in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

31. Divisional venue is proper in the Western Division of the Central District of California under Civil Local Rule 3-2(d) because the events and omissions giving rise to Plaintiffs' claims occurred in Ventura County, California.

## NATURE OF PLAINTIFFS' FEDERAL CLAIMS

32. This action is not a forbidden de facto appeal from a state-court judgment. Plaintiffs do not assert legal error by the Ventura County Superior Court as their federal injury and do not ask this Court to decide whether the Superior Court correctly determined that Bruce is legally "vicious."

33. Plaintiffs assert independent federal claims arising from Defendants' conduct and omissions in the administrative and enforcement sequence leading to execution of Bruce's destruction order, including the alleged absence of constitutionally adequate process before Plaintiffs' protected property and possessory interests are permanently extinguished.

34. SPARC's retained rights were never adjudicated in the Oxnard administrative proceedings, the VCAS administrative proceeding, or the April 15, 2026 de novo hearing. SPARC was not formally noticed, served, joined, or heard as a rights-holder in those proceedings, despite Defendants' knowledge or reason to know of SPARC's legal interests.

## FEDERAL CONSTITUTIONAL INJURIES ASSERTED

35. Plaintiffs assert independent federal constitutional injuries arising from Defendants' administrative and enforcement conduct, not from state-court legal error.

36. Plaintiffs' first federal injury is the unreasonable seizure, continued detention, and threatened destruction of Bruce in violation of the Fourth Amendment. Plaintiffs allege that Defendants deceptively or misleadingly induced Birgy's family to bring Bruce into VCAS custody without informed, voluntary consent, retained custody of Bruce, processed him for destruction, refused or failed to release him to lawful non-destruction alternatives, and now seek to destroy him despite Plaintiffs' protected property and possessory interests.

37. Plaintiffs' second federal injury is the deprivation and threatened deprivation of protected property and possessory interests without procedural due process under the Fourteenth Amendment. Plaintiffs allege that the administrative and enforcement sequence failed to provide constitutionally adequate notice, disclosure of the evidence, opportunity to be heard, opportunity to present material witnesses and evidence, opportunity to test the evidence, and adjudication of lawful non-destruction alternatives before Defendants sought Bruce's destruction.

38. Plaintiffs' third federal injury is the failure to notice, join, hear, or adjudicate SPARC before Defendants sought to extinguish SPARC's retained rights in Bruce, despite knowing or having reason to know of SPARC's property and disposition rights. SPARC's rights arise from its rescue of Bruce, its adoption agreement, its contractual rights, its retained possessory, ownership, and/or reversionary interests, and its contract-based property rights, including the right to exclude unauthorized disposition or destruction inconsistent with those rights.

39. Plaintiffs' fourth federal injury is the threatened permanent destruction of SPARC's retained contract-based property rights without adjudication or just compensation, in violation of the Fifth Amendment Takings Clause as incorporated against state and local governments through the Fourteenth Amendment. Plaintiffs allege that SPARC retained property rights under the adoption agreement, including rights of notice, return, recovery, reversion, and exclusion of unauthorized destruction, and that Defendants' destruction of Bruce would permanently extinguish those rights.

40. Plaintiffs' fifth federal injury is Defendants' use of dangerous-dog, nuisance, administrative-hearing, and enforcement procedures that were unconstitutional as applied to Plaintiffs and Bruce. Plaintiffs allege that those procedures, as applied, permitted or resulted in irreversible destruction without constitutionally

adequate safeguards, without adequate consideration of lawful non-destruction alternatives, and without adjudication of SPARC's retained rights.

41. Defendants contend that any administrative defects were cured by the April 15, 2026 de novo hearing in Ventura County Superior Court. Plaintiffs allege that the de novo hearing did not cure those defects because the hearing itself did not provide constitutionally adequate process, did not review the separate Oxnard administrative proceedings, and did not adjudicate SPARC's retained rights.

42. The County's reliance on the de novo hearing as "final and conclusive" under Ventura County Ordinance Code § 4470-6(c) and California Food and Agricultural Code § 31624 does not resolve Plaintiffs' federal claims. Finality under state dangerous-dog procedures does not convert constitutionally inadequate process into constitutionally adequate process, does not adjudicate rights that were never before the decisionmaker, and does not supply a cure where the de novo hearing itself lacked constitutionally adequate process.

43. Plaintiffs allege that this is especially important where the County's procedure provides only one de novo review of a destruction order. If that review is constitutionally defective, Defendants cannot rely on it as both the only process available and the cure for the absence of constitutionally adequate process. The cumulative effect is that constitutionally deficient administrative proceedings were followed by a constitutionally deficient de novo hearing, leaving Plaintiffs without any constitutionally adequate process before Defendants sought Bruce's irreversible destruction.

44. Plaintiffs do not ask this Court to decide whether Judge Borrell correctly determined that Bruce was legally "vicious." Plaintiffs' federal claims are not inextricably intertwined with the dangerous-dog determination because they do not depend on whether Judge Borrell's ultimate conclusion about Bruce was correct.

They depend on whether Plaintiffs received constitutionally adequate process before Defendants sought irreversible destruction.

45. This Court can adjudicate those federal constitutional questions without deciding whether Bruce is legally vicious. The Court can determine whether Defendants provided constitutionally adequate process, whether Defendants' continued seizure and threatened destruction violate Plaintiffs' federal rights, whether Defendants' procedures were unconstitutional as applied, and whether SPARC's retained rights were adjudicated, without reweighing the dangerous-dog merits.

## COMPANION-ANIMAL PROPERTY AND THE NATURE OF THE DEPRIVATION

46. Bruce is companion-animal property under California law. Plaintiffs allege that Bruce is personal property subject to constitutional protection, while also being a living companion animal whose legal value is not reducible to ordinary market value. See Cal. Penal Code § 491(a); Cal. Civ. Code § 655.

47. California law recognizes that companion animals are not treated identically to ordinary fungible property. In Martinez v. Robledo, 210 Cal.App.4th 384 (2012), the Court of Appeal recognized that damages for injury to a pet are not necessarily limited to market value because the law treats animals differently from other forms of personal property. In Plotnik v. Meihaus, 208 Cal.App.4th 1590 (2012), the Court of Appeal allowed emotional-distress damages for intentional harm to companion animals. California Family Code section 2605 likewise recognizes that, in marital dissolution proceedings, courts may consider the "care" of companion animals in a manner resembling a best-interests analysis, rather than applying only a strict property-based analysis.

48. Plaintiffs allege that this distinction matters here. Defendants do not merely seek to temporarily regulate, impound, or detain property; they seek to

permanently destroy Bruce. Once Bruce is destroyed, no later proceeding, monetary award, or substitute animal can restore the specific living companion animal or the property, possessory, contractual, reversionary, and contract-based property interests extinguished with him.

49. Defendants may regulate dangerous-dog and nuisance matters, but they may not permanently destroy unique companion-animal property or extinguish Plaintiffs' protected interests in Bruce without constitutionally adequate process.

## PLAINTIFFS' PROTECTED INTERESTS IN BRUCE

50. Plaintiffs allege protected property, possessory, contractual, ownership, reversionary, future, and/or contract-based property interests in Bruce sufficient to support claims under the Fourth, Fifth, and Fourteenth Amendments.

51. Birgy has protected property and possessory interests in Bruce arising from her adoption of Bruce, her relationship with Bruce as his owner, guardian, keeper, and/or person responsible for him, and Defendants' pursuit of dangerous-dog and nuisance proceedings against her based on that relationship.

52. Birgy's protected interests are not limited to whether Bruce may return to her physical custody. Plaintiffs allege that Birgy retains protected property and possessory interests in Bruce's continued life, lawful disposition, and protection from destruction without constitutionally adequate process.

53. SPARC has separate retained interests in Bruce arising from its rescue of Bruce, its adoption agreement with Birgy, its contractual rights under that agreement, its retained possessory, ownership, reversionary, future, and/or contract-based property rights, and its retained interest in the lawful disposition of a SPARC-origin dog.

54. The SPARC adoption agreement required Birgy to notify SPARC if she could no longer care for or keep Bruce. It also gave SPARC rights to protect, re-

cover, rehome, or resume custody of Bruce under circumstances set forth in the agreement.

55. SPARC alleges that it retained a future, reversionary, and/or contract-based property interest in Bruce throughout Birgy's adoption. That retained interest was not merely an abstract expectation. It was a property interest preserved by contract and tied to SPARC's continuing right to protect the lawful disposition of Bruce as a SPARC-origin dog.

56. SPARC further alleges that its retained future and reversionary interests could vest fully, become possessory, or become immediately enforceable when Bruce's custody, control, disposition, or destruction implicated rights preserved by the adoption agreement. Those circumstances included, at minimum, any effort to euthanize Bruce, any inability by Birgy to continue keeping or caring for Bruce, any proposed disposition inconsistent with SPARC's retained rights, or any government action that would permanently extinguish SPARC's ability to recover, protect, rehome, or resume custody of Bruce.

57. SPARC's protected interests include contract-based property rights within the meaning of the Fifth Amendment Takings Clause, as incorporated against state and local governments through the Fourteenth Amendment. Those rights include SPARC's right to enforce the adoption agreement, its right to receive notice before Bruce was rehomed, transferred, relinquished, euthanized, or otherwise disposed of, its right to recover or resume custody of Bruce under the agreement's forfeiture/reversion provisions, its right of first refusal or return, and its right to exclude unauthorized disposition or destruction inconsistent with those rights.

58. SPARC alleges that those rights were part of the bundle of property rights retained by SPARC through the adoption agreement, including the right to control or object to disposition of a SPARC-origin dog if the adopter could no

longer keep him, if the adopter failed to comply with the agreement, or if the government sought to destroy Bruce without adjudicating SPARC's retained rights.

59. Defendants knew or had reason to know that Bruce was connected to SPARC and that SPARC's retained rights were implicated before Defendants pursued or sought to execute Bruce's destruction. VCAS records connected Bruce to SPARC, VCAS contacted SPARC for records, VCAS had a known practice concerning SPARC-origin dogs, and written communications identified SPARC as Bruce's rescue of origin and as a non-lethal return or placement option.

60. Defendants' threatened destruction of Bruce would permanently extinguish SPARC's retained contract-based property rights, including SPARC's future and reversionary interests, right to recover or resume custody, right of first refusal or return, and right to exclude unauthorized disposition or destruction.

61. Plaintiffs plead Birgy's and SPARC's interests in the alternative. To the extent Birgy retained ownership or possessory rights, those rights could not be extinguished without constitutionally adequate process. To the extent Birgy's ownership rights were forfeited, relinquished, impaired, transferred, limited, or otherwise subject to SPARC's retained rights under the adoption agreement, SPARC's retained contractual, possessory, ownership, reversionary, future, and contract-based property rights could not be extinguished without notice, an opportunity to be heard, constitutionally adequate process, and just compensation if Defendants' conduct is characterized as a taking.

62. Defendants' threatened destruction of Bruce would permanently extinguish Plaintiffs' property, possessory, contractual, ownership, reversionary, future, and/or contract-based property interests. Once Bruce is destroyed, no later hearing, appeal, damages award, or administrative process can restore the life taken or the property interests extinguished.

**SPARC'S INDEPENDENT RIGHTS AND JEAN MARIE WEBSTER'S LACK OF AUTHORITY TO BIND SPARC**

63. SPARC was not a party to the Oxnard administrative proceedings, the VCAS administrative proceeding, or the April 15, 2026 de novo hearing.

64. SPARC was not formally noticed, served, joined, or heard as a rights-holder in those proceedings, despite Defendants' knowledge of SPARC's connection to Bruce and Defendants' prior practice involving SPARC-origin dogs.

65. SPARC's adoption-agreement rights, retained possessory, ownership, reversionary, future, and/or contract-based property rights, and ability to accept Bruce back into secure custody were not adjudicated in those proceedings.

66. Jean Marie Webster, SPARC's founder and major benefactor, personally appeared or spoke at the VCAS administrative hearing after learning shortly before the hearing that Bruce might be a SPARC-origin dog.

67. Webster's appearance was personal and humanitarian. She attended to learn more about Bruce's situation and to offer help if she could, including possible personal assistance with non-lethal placement or sanctuary care.

68. Webster was not SPARC's president, chief executive officer, officer, attorney, or authorized legal representative.

69. Webster did not appear as counsel for SPARC, did not file any pleading or formal appearance on SPARC's behalf, and did not state that she was appearing with authority to waive, litigate, or adjudicate SPARC's retained rights.

70. Webster's personal appearance did not make SPARC a party, did not constitute formal notice to SPARC, did not waive SPARC's rights, and did not bind SPARC to the result of a proceeding in which SPARC was never formally noticed, served, joined, or heard.

71. To the extent Defendants contend they relied on Webster's personal appearance as proof of SPARC's participation or waiver, that reliance was not rea-

sonable because SPARC is a corporate entity and no formal notice, service, joinder, pleading, corporate authorization, attorney appearance, or adjudication of SPARC's retained rights occurred.

72. No administrative or judicial decision determined whether SPARC had retained contractual, possessory, ownership, reversionary, future, or contract-based property rights in Bruce, whether Bruce should be returned to SPARC under the adoption agreement, or whether SPARC could accept Bruce back into secure custody under appropriate conditions.

73. Defendants now seek to execute a destruction order that would permanently extinguish SPARC's retained rights in Bruce without any proceeding in which SPARC was made a party or given an adequate opportunity to assert those rights.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Bruce's Adoption and the SPARC Adoption Agreement

74. Bruce is a neutered, large-breed male dog identified in VCAS records as animal number A842188 and referred to in various records as a Great Pyrenees, German Shepherd, and/or Anatolian Shepherd.

75. SPARC originally rescued Bruce as a puppy. SPARC records identified Bruce as "Charlie," animal number 52653411, before his name was changed to Bruce.

76. On or about May 15, 2023, Birgy entered into a SPARC foster-to-adopt agreement for Bruce, then identified in SPARC paperwork as "Charlie."

77. On or about June 21, 2023, Birgy executed a SPARC adoption agreement for Bruce.

78. The SPARC adoption agreement required Birgy to notify SPARC without delay if she could no longer care for or keep Bruce.

79. The SPARC adoption agreement required Birgy to give SPARC reasonable time to rehome Bruce or place Bruce in an approved foster home, if one was available.

80. The SPARC adoption agreement further advised Birgy not to rehome or euthanize her SPARC pet without contacting SPARC.

81. The SPARC adoption agreement also stated: "I UNDERSTAND THAT FAILURE TO COMPLY WITH ANY OF THE ABOVE PROVISIONS WILL RESULT IN IMMEDIATE FORFEITURE OF THE ANIMAL TO SPARC."

82. The adoption agreement was signed by Birgy and SPARC.

83. SPARC alleges that the adoption agreement preserved ongoing contractual, future, reversionary, and/or contract-based property rights in Bruce, including SPARC's right to notice if Birgy could no longer care for or keep Bruce and SPARC's right to protect, recover, rehome, or resume custody of Bruce under circumstances set forth in the agreement.

84. SPARC alleges that those retained rights existed throughout Birgy's adoption and were not created only after Bruce entered government custody.

85. SPARC further alleges that its retained rights were implicated when Bruce entered VCAS custody, when Defendants pursued proceedings that could result in Bruce's destruction, when Birgy and Krasnoff, Birgy's spouse, identified SPARC as Bruce's rescue of origin and a non-lethal return option, and when Defendants sought to execute a destruction order that would permanently eliminate SPARC's ability to recover, protect, rehome, or resume custody of Bruce.

86. Plaintiffs plead Birgy's and SPARC's respective interests in the alternative. To the extent Birgy retained ownership or possessory rights in Bruce, Defendants could not extinguish those rights without constitutionally adequate process. To the extent Birgy's ownership rights were forfeited, relinquished, impaired, transferred, limited, or otherwise subject to SPARC's retained rights under the

adoption agreement, Defendants could not extinguish SPARC's retained rights without constitutionally adequate process.

**B. Circumstances Leading to Government Custody**

87. After his adoption from SPARC, Bruce lived with Birgy and her family.

88. From approximately May 2023 until February 2024, Bruce lived with Birgy and her spouse, Erick Krasnoff, without any known bite incidents.

89. Bruce was known to community members through local parks, including Cemetery Park.

90. Multiple individuals who knew Bruce described him as gentle, calm, loyal, affectionate, and good with people and other dogs.

91. Plaintiffs allege that the incidents later relied upon by Defendants occurred during periods of significant household instability, including housing loss, homelessness, medical disruption, financial stress, and family crisis.

92. Plaintiffs allege that those circumstances affected Bruce's stability, handling, environment, and routine.

93. In or around early 2024, Birgy's family lost housing after their landlord sold the home.

94. Plaintiffs allege that the first incident involving Bruce occurred during the family's move from that home, while the household was under significant stress.

95. After the first incident, VCAS ordered a quarantine, which was completed at the family's next home.

96. Plaintiffs allege that Bruce then lived in that next home for approximately eighteen months without further known bite incidents.

97. Plaintiffs allege that the family later lost housing again and experienced a period of homelessness and instability.

98. On or about September 16, 2025, another incident occurred outside a CVS Pharmacy in Ventura.

99. Plaintiffs allege that, during that incident, Bruce had been tied outside the pharmacy entrance with limited ability to retreat from people entering and exiting the store.

100. After the September 16, 2025 incident, VCAS ordered another quarantine.

101. Plaintiffs allege that the September 2025 quarantine was completed at the family's daughter's apartment and that Bruce was later released from quarantine.

102. The family later moved into a low-income apartment in Oxnard.

103. Plaintiffs allege that after the move into the Oxnard apartment, Bruce showed signs of anxiety around the new apartment environment.

104. Plaintiffs allege that family members used a muzzle with Bruce in public as a precautionary safety measure.

105. Plaintiffs allege that, during the relevant period, Birgy was experiencing severe instability, including mental health challenges, loss of medical coverage, medication disruption, bereavement, homelessness, and family stress.

106. Birgy has accepted responsibility for not handling Bruce correctly during the incidents.

107. Birgy does not seek to resume handling Bruce in the same circumstances that existed before Bruce entered VCAS custody.

108. Birgy and Krasnoff both support safe alternate placement for Bruce.

109. Plaintiffs allege that these facts were material to the process Defendants were required to provide because they bore on whether Bruce's circumstances could be addressed through lawful non-destruction alternatives, including struc-

tured care, appropriate placement, rescue transfer, or conditions short of destruction.

**C. VCAS Custody / Seizure / Continued Detention**

110. On or about February 23, 2026, Bruce entered VCAS custody after Birgy's family received a door hanger, had contact with VCAS personnel, and contacted VCAS regarding Bruce.

111. VCAS records state that Bruce's owners brought Bruce in for "impound/quarantine" pending a hearing.

112. Plaintiffs allege that the family understood, at least initially, that Bruce was being brought to VCAS for quarantine, veterinary evaluation or care, and/or as part of a required process before a hearing.

113. Plaintiffs allege that the family asked why Bruce could not quarantine at home, as he had done before.

114. Plaintiffs allege that the family also informed VCAS that an Oxnard administrative hearing concerning Bruce had already been scheduled.

115. Plaintiffs allege that the family informed VCAS that Bruce was temporarily residing with Birgy's daughter and that a future placement with family friend Rebecca Spradlin was being prepared for Bruce.

116. Plaintiffs allege that the family further informed VCAS that Bruce had an upcoming veterinary appointment.

117. VCAS records state that the owner reported Bruce was going to be taken to the veterinarian before coming to VCAS, but that the owner was told to bring Bruce in before that appointment.

118. Plaintiffs allege that VCAS personnel deceptively or misleadingly induced the family to bring Bruce in by stating that VCAS simply wanted to get the

process started and that VCAS had veterinarians who could evaluate or care for Bruce if the family signed authorization forms.

119. Plaintiffs allege that, when the family continued trying to understand why Bruce had to be brought to VCAS despite the pending Oxnard hearing, prior home quarantines, and the planned placement with Spradlin, VCAS personnel changed course and told the family this was not about home quarantine, that VCAS handled the process differently than the City of Oxnard, and that Bruce had to be impounded before a VCAS hearing could be scheduled.

120. Plaintiffs allege that VCAS personnel told the family they had no choice but to bring Bruce to VCAS.

121. Plaintiffs allege that VCAS personnel told the family to cancel Bruce's veterinary appointment and represented that Bruce would receive veterinary evaluation or care at VCAS. Plaintiffs further allege that VCAS did not provide the veterinary evaluation or care the family believed Bruce would receive.

122. Plaintiffs allege that the family brought Bruce to VCAS believing they were complying with government instructions and doing what was necessary for Bruce.

123. Plaintiffs allege that the family did not understand that they had the right to refuse to surrender custody of Bruce absent a warrant, exigent circumstances, lawful seizure authority, or other lawful basis.

124. Plaintiffs allege that Bruce's entry into VCAS custody was not the result of informed, voluntary consent.

125. On February 23, 2026, VCAS accepted Bruce into custody, impounded him, and continued holding him within the VCAS shelter system.

126. VCAS records identify Bruce as animal number A842188.

127. VCAS records state that the owner reported Bruce had some medical records from Mission Animal Hospital and that "everything else was from SPARC."

128. VCAS records further state that VCAS called SPARC to request records and left a message.

129. VCAS intake notes state that Bruce was wearing a muzzle when he was brought in, was easy to leash and walk to intake, allowed handling and vaccination without issue, and had his muzzle and leash removed without issue. Plaintiffs allege that these notes are material because they show Bruce could be handled by VCAS staff without incident when brought into custody.

130. VCAS records characterized Bruce's intake as "confiscate," while other VCAS kennel-card information characterized his custody status as though his owners could not keep him.

131. Plaintiffs allege that those custody descriptions were materially inconsistent because Bruce was not brought to VCAS as an ordinary owner-surrender adoption case; he entered VCAS custody after VCAS enforcement contact and instructions pending a hearing.

132. Plaintiffs further allege that the kennel card reflected no adoption restrictions while also stating, in substance, that interested persons should ask about Bruce's bite history.

133. Plaintiffs allege that VCAS's own kennel-card information is material because it shows VCAS was treating Bruce within its shelter system in a manner inconsistent with the later position that Bruce was categorically unavailable for release, transfer, rescue placement, or non-lethal disposition.

134. On or about March 5, 2026, VCAS records state that Bruce was a "model citizen in his kennel."

135. The March 5, 2026 VCAS note further states that Bruce had not shown signs of fear, anxiety, or stress.

136. Plaintiffs allege that VCAS's own positive observations were material to the process Defendants were required to provide because they bore on Bruce's custody status, handling, risk assessment, and available non-destruction alternatives before Defendants pursued destruction.

137. Plaintiffs allege that VCAS thereafter continued to hold Bruce, processed him for dangerous/vicious-dog proceedings, and sought an order requiring his destruction.

138. Plaintiffs allege that Defendants' continued detention of Bruce and threatened destruction of him substantially interfered and continue to interfere with Plaintiffs' protected property and possessory interests.

139. Plaintiffs allege that Defendants have continued to hold Bruce without constitutionally adequate process and without adjudication of SPARC's retained rights.

**D. Oxnard Administrative Proceedings**

140. At the time Bruce entered VCAS custody on February 23, 2026, an Oxnard administrative hearing concerning Bruce had already been scheduled, underscoring that the City of Oxnard and VCAS proceedings were separate but overlapping administrative processes.

141. The City of Oxnard conducted municipal administrative proceedings concerning Bruce based on alleged incidents involving Beatriz Ziegenfus and Felton Johnson.

142. The first Oxnard administrative hearing took place on or about March 5, 2026.

143. Plaintiffs allege that the March 5, 2026 Oxnard hearing concerned al-

leged incidents involving Alex Vera, Larry Graves, and Beatriz Ziegenfus.

144. Plaintiffs allege that only Beatriz Ziegenfus appeared as a complaining witness at the March 5, 2026 Oxnard hearing.

145. Plaintiffs allege that Birgy appeared at the March 5, 2026 Oxnard hearing and provided testimony.

146. Plaintiffs allege that Oxnard did not provide Birgy with the complete bite reports, witness materials, hearing packet, investigative materials, or other evidence used at the March 5, 2026 Oxnard hearing before the hearing took place.

147. Plaintiffs allege that Oxnard did not provide SPARC with notice of the March 5, 2026 Oxnard hearing.

148. Plaintiffs allege that SPARC was not named, noticed, served, joined, heard, or treated as a party or rights-holder in the March 5, 2026 Oxnard hearing.

149. Plaintiffs allege that SPARC's retained contractual, possessory, ownership, reversionary, future, and/or contract-based property rights were not adjudicated in the March 5, 2026 Oxnard hearing.

150. The second Oxnard administrative hearing took place on or about March 12, 2026.

151. Plaintiffs allege that the March 12, 2026 Oxnard hearing concerned alleged incidents involving Felton Johnson.

152. Plaintiffs allege that the Felton Johnson allegations did not involve a bite.

153. Plaintiffs allege that neither Birgy nor SPARC received constitutionally adequate notice of the March 12, 2026 Oxnard hearing before it occurred.

154. Plaintiffs allege that Birgy did not attend the March 12, 2026 Oxnard hearing because she did not receive constitutionally adequate notice of that hearing before it occurred.

155. Plaintiffs allege that SPARC was not named, noticed, served, joined,

heard, or treated as a party or rights-holder in the March 12, 2026 Oxnard hearing.

156. Plaintiffs allege that SPARC's retained contractual, possessory, ownership, reversionary, future, and/or contract-based property rights were not adjudicated in the March 12, 2026 Oxnard hearing.

157. Plaintiffs allege that Birgy was provided an audio recording of the March 12, 2026 hearing only after that hearing occurred.

158. Plaintiffs allege that post-hearing access to an audio recording did not cure the lack of pre-hearing notice, disclosure of the evidence, opportunity to attend, opportunity to present evidence, or opportunity to test the evidence before the hearing officer made findings affecting Bruce.

159. Plaintiffs allege that Oxnard did not provide Birgy or SPARC with the complete evidence, witness materials, hearing packet, investigative materials, or other information used at the March 12, 2026 hearing before that hearing occurred.

160. On March 13, 2026, Birgy wrote to Oxnard concerning Bruce's case. She requested non-lethal placement with Rebecca Spradlin and further stated that, if that placement was not approved, "Bruce must be returned to the Santa Paula Animal Rescue Center where I adopted him three years ago."

161. On March 27, 2026, Birgy again wrote to Oxnard officials. She stated that Bruce had been adopted from SPARC and should be returned to SPARC rather than euthanized.

162. Plaintiffs allege that these written communications gave Oxnard notice, before the Oxnard written decisions were issued and/or served, that Bruce was a SPARC-origin dog, that SPARC was being identified as a non-lethal return or placement option, and that Birgy was requesting return to SPARC rather than destruction.

163. Plaintiffs allege that Oxnard's own municipal procedures required notice of the hearing, required the notice to include a copy of the complaint, recog-

nized the right to cross-examine witnesses on relevant issues, required hearings to be recorded, and required written decisions. See, e.g., Oxnard Municipal Code §§ 5-4, 5-7, 5-10, 5-12.

164. Plaintiffs allege that Oxnard's procedures, as applied to Bruce, deprived Plaintiffs of constitutionally adequate notice, disclosure of the evidence, opportunity to be heard, opportunity to present evidence, opportunity to cross-examine or otherwise test the evidence, and adequate written decisions before protected interests in Bruce were impaired.

165. According to Oxnard's jurisdiction briefing, the first Oxnard written decision was issued on or about April 16, 2026 and served on or about April 17, 2026.

166. According to Oxnard's jurisdiction briefing, the second Oxnard written decision was issued on or about May 14, 2026 and served on or about May 19, 2026.

167. Plaintiffs allege that Oxnard therefore issued and/or served its written decisions after the March 13 and March 27 written communications identifying SPARC as Bruce's rescue of origin and as a non-lethal return or placement option.

168. Plaintiffs allege that Oxnard nevertheless did not notice, join, hear, or adjudicate SPARC as a party or rights-holder before issuing or serving those written decisions.

169. Plaintiffs allege that Oxnard issued administrative decisions finding Bruce to be a nuisance and ordering Bruce destroyed based on the Oxnard proceedings.

170. Plaintiffs allege that Oxnard's constitutionally deficient municipal administrative proceedings affected Plaintiffs' protected property and possessory interests in Bruce and contributed to the administrative and enforcement sequence leading to Bruce's continued detention and threatened destruction.

171. The April 15, 2026 de novo hearing in Ventura County Superior Court arose from the VCAS administrative decision, not the separate Oxnard administrative decisions.

172. Plaintiffs allege that the April 15 order did not cure alleged defects in the Oxnard administrative proceedings because Oxnard's municipal decisions were not before Judge Borrell.

173. Oxnard itself has represented that there is no state-court action or judgment as to the City. Plaintiffs therefore allege that Rooker-Feldman does not bar Plaintiffs' federal claims against Oxnard because those claims arise from Oxnard's municipal administrative conduct and omissions, not from a state-court judgment.

174. Plaintiffs allege that Oxnard's conduct and omissions deprived Plaintiffs of constitutionally adequate process before their protected interests in Bruce were impaired or threatened with permanent extinguishment.

**E. VCAS Administrative Proceeding**

175. After Bruce entered VCAS custody on February 23, 2026, VCAS pursued a separate dangerous/vicious-dog administrative proceeding against Birgy and Erick Krasnoff.

176. VCAS's own records connected Bruce to SPARC before VCAS pursued destruction. On February 23, 2026, VCAS records stated that the owner reported Bruce had some medical records from Mission Animal Hospital and that "everything else was from SPARC."

177. VCAS records further state that VCAS called SPARC to request medical records for Bruce and left a message.

178. Plaintiffs allege that contacting SPARC for records was not the same as notifying SPARC that Bruce was the subject of a dangerous/vicious-dog proceed-

ing that could result in his destruction.

179. Plaintiffs allege that VCAS had a known and consistent practice of contacting SPARC when dogs originating from SPARC entered VCAS custody or otherwise came into contact with VCAS.

180. Plaintiffs allege that this practice reflected VCAS's understanding that SPARC-origin dogs involved legally or operationally relevant SPARC-related interests, including return, placement, rescue, reversionary, or other disposition interests.

181. Plaintiffs allege that VCAS did not notify SPARC as a rights-holder with property and disposition interests in Bruce, did not name SPARC as a party, did not serve SPARC with the administrative petition, and did not ask the hearing officer to adjudicate SPARC's retained rights before pursuing Bruce's destruction.

182. On or about March 11, 2026, Bryan Bray, Field Services Manager for VCAS, signed a Petition to Determine Bruce as Vicious.

183. The VCAS petition sought a determination that Bruce was vicious and requested an order authorizing Bruce's destruction.

184. The VCAS petition stated that 89 pages of supporting materials were attached.

185. Plaintiffs allege that the available records do not clearly establish when, if ever, Birgy received the complete 89-page evidentiary packet.

186. Plaintiffs allege that, to the extent any evidentiary materials were provided before the VCAS administrative hearing, Birgy was not given a constitutionally adequate and timely opportunity to review, investigate, prepare a response to, present evidence against, or test the complete evidence VCAS intended to use before VCAS sought Bruce's destruction.

187. Plaintiffs allege that SPARC did not receive the VCAS petition, the 89-page evidentiary packet, the hearing materials, or formal notice that SPARC's rights could be affected or extinguished, despite Defendants' knowledge of

SPARC's relationship to Bruce as a property-interest holder.

188. On March 24, 2026, before the administrative decision issued, Erick Krasnoff, Birgy's spouse, wrote directly to VCAS Animal Control Officer Alina Hoffman concerning Bruce's case.

189. In that email, Krasnoff described the instability surrounding Bruce's history, including periods when the family was losing housing, experiencing homelessness, or recently emerging from homelessness.

190. Krasnoff asked VCAS to allow Bruce to enter the care of family friend Rebecca Spradlin as a non-lethal placement alternative.

191. Krasnoff further stated that, if VCAS was unwilling to allow that placement, then "based on Santa Paula Animal Rescue Center v. County of L.A.," VCAS "must have Bruce relinquished to the rescue that he was adopted from (Santa Paula Animal Rescue Center)."

192. Plaintiffs allege that Krasnoff's March 24, 2026 email gave VCAS direct written notice before the administrative decision issued that Bruce had been adopted from SPARC, that SPARC was being identified as the rescue with a legally relevant role in Bruce's disposition, and that non-lethal placement or return to SPARC was being requested before destruction.

193. On or about March 24 or March 25, 2026, VCAS conducted an administrative hearing concerning whether Bruce should be declared vicious and destroyed.

194. Plaintiffs allege that the VCAS administrative hearing was conducted remotely by Zoom before Hearing Officer Dean Phaneuf.

195. Plaintiffs allege that Birgy appeared at the VCAS administrative hearing.

196. Plaintiffs allege that the VCAS administrative hearing was affected by technical difficulties associated with the remote Zoom format.

197. Plaintiffs allege that at least two material witnesses for Birgy and/or

non-lethal placement alternatives were unable to appear and provide evidence because of technical difficulties or access problems with the remote hearing.

198. One such witness was Cappi Patterson of Buddy Nation. Plaintiffs allege that Patterson's evidence was material because Buddy Nation has worked with people experiencing homelessness and their pets for decades, and Bruce's case involved alleged incidents occurring during periods of housing loss, homelessness, and instability. Patterson's testimony would have assisted in explaining whether Bruce's behavior was connected to the context in which the incidents occurred and whether that context could be addressed through non-lethal supports, placement, or management.

199. Another such witness was Breanna Aguilera, founder of Angels Training and Boarding.

200. Plaintiffs allege that Aguilera had evaluated Bruce at the shelter and was prepared to provide material evidence concerning Bruce's behavior, kennel presentation, degree of risk, ease of handling, and non-lethal management considerations.

201. Plaintiffs allege that Aguilera observed Bruce in his kennel and did not observe barking, lunging, growling, fear-based reactivity, aggression, or other concerning behavior.

202. Plaintiffs allege that Aguilera observed Bruce as calm, non-reactive to environmental stimuli, and more consistent with a shut-down or depressed emotional state than with a dog presenting an immediate danger to people or other animals.

203. Plaintiffs allege that the inability of Patterson and Aguilera to appear and provide evidence deprived Birgy of an adequate opportunity to present materially significant evidence before VCAS sought Bruce's destruction.

204. Plaintiffs allege that Jean Marie Webster personally appeared or spoke at the VCAS administrative hearing.

205. Webster had learned before the VCAS administrative hearing that Bruce might be a SPARC-origin dog. Plaintiffs allege that Webster learned this information from Cappi Patterson after the Oxnard hearings had already occurred.

206. Webster attended the VCAS administrative hearing personally to learn more about Bruce's situation and to offer help if she could, including possible personal assistance with non-lethal placement or sanctuary care.

207. Webster's personal humanitarian appearance did not make SPARC a party, did not constitute formal notice to SPARC, did not waive SPARC's rights, and did not adjudicate SPARC's retained contractual, possessory, ownership, reversionary, future, and/or contract-based property rights in Bruce.

208. Webster was not appearing as SPARC's attorney, was not SPARC's president, chief executive officer, officer, or authorized legal representative, and did not have authority to waive, litigate, or adjudicate SPARC's retained rights.

209. Plaintiffs allege that SPARC was not named, noticed, served, joined, heard, or treated as a party or rights-holder in the VCAS administrative hearing.

210. Plaintiffs allege that SPARC was not served with the petition or hearing materials as a rights-holder, was not represented by counsel in that capacity, was not afforded a formal opportunity to assert its adoption-agreement rights, and did not receive findings adjudicating its retained rights.

211. Plaintiffs allege that Birgy was not given a constitutionally adequate opportunity to prepare for, respond to, present evidence against, or test the complete evidence VCAS relied upon before VCAS sought Bruce's destruction.

212. Plaintiffs allege that the VCAS administrative process did not provide constitutionally adequate process before VCAS sought the irreversible destruction of Bruce.

213. On or about March 26, 2026, the VCAS administrative hearing officer issued an Order After Hearing finding Bruce vicious and ordering that Bruce be destroyed.

214. The VCAS Order After Hearing also prohibited the owner from owning, controlling, or having custody of any dog for three years from the date the order became final.

215. Plaintiffs allege that this prohibition created an additional deprivation of Birgy's property, possessory, and liberty interests beyond Bruce's destruction, making constitutionally adequate notice, disclosure of the evidence, opportunity to be heard, and opportunity to test the evidence especially important before the order issued.

216. Plaintiffs allege that the VCAS Order After Hearing did not adjudicate SPARC's retained rights, did not determine whether SPARC had retained contractual, possessory, ownership, reversionary, future, or contract-based property rights in Bruce, and did not determine whether Bruce could be returned to SPARC or transferred to an appropriate rescue placement under appropriate conditions.

217. Plaintiffs allege that the VCAS administrative proceeding became part of the administrative and enforcement sequence leading to Bruce's continued detention and threatened destruction.

218. Plaintiffs allege that the VCAS administrative proceeding deprived Plaintiffs of constitutionally adequate process before their protected property and possessory interests in Bruce were impaired or threatened with permanent extinguishment.

**F. April 15, 2026 De Novo Hearing**

219. Birgy appealed the VCAS administrative order to Ventura County Superior Court.

220. The appeal was assigned case number 2026CUPT063248.

221. The April 15, 2026 de novo hearing in Ventura County Superior Court arose from the VCAS administrative decision.

222. The de novo hearing did not arise from, and did not review, the separate

Oxnard administrative decisions.

223. The County and VCAS now rely on the de novo hearing as a cure for earlier defects in the VCAS administrative process.

224. Plaintiffs allege that the de novo hearing did not cure those defects. Even if a de novo hearing could, in theory, provide constitutionally adequate review of an earlier administrative process, it could not do so here because the de novo hearing itself did not provide constitutionally adequate process.

225. SPARC was not a named party to the de novo hearing.

226. SPARC was not formally noticed, served, joined, or heard as a rights-holder in the de novo hearing, despite Defendants' knowledge of SPARC's legal interests.

227. SPARC's adoption-agreement rights, retained possessory, ownership, reversionary, future, and/or contract-based property rights, and ability to accept Bruce back into secure custody were not adjudicated in the de novo hearing.

228. The April 15 minute order states that the Court convened at 8:56 a.m. and reported that it was starting a jury trial later that morning.

229. Plaintiffs allege that, although the April 15 minute order states that each side would be given 30 minutes to present its case, VCAS / the County used approximately 48 minutes before Birgy's side began presenting evidence, leaving Plaintiffs only a very compressed remainder of the one-hour hearing.

230. The April 15 minute order reflects that VCAS / the County began presenting witnesses at approximately 8:58 a.m. and that its final witness, Officer Bryan Bray, was excused at approximately 9:46 a.m. Plaintiffs allege that VCAS / the County therefore used approximately 48 minutes of the allocated one-hour de novo hearing before Plaintiffs were able to begin presenting evidence.

231. The April 15 minute order reflects that VCAS / the County presented Felton Johnson, Officer Fermin Hernandez, Larry Graves, Officer Jennifer Hansen, and Officer Bryan Bray before Birgy's side began presenting evidence.

232. The April 15 minute order reflects that Officer Bryan Bray was excused at approximately 9:46 a.m., after which Birgy's side began presenting evidence.

233. Plaintiffs allege that, according to the minute order, VCAS / the County used approximately 48 minutes before Birgy's side began presenting evidence, even though each side had nominally been allotted 30 minutes.

234. Plaintiffs allege that Birgy's side therefore began presenting evidence only after VCAS / the County had already used more than the nominal time allotted to one side, leaving Birgy with a compressed opportunity to present evidence and witnesses before closing arguments and the destruction order.

235. Plaintiffs allege that the time available was not sufficient for a de novo proceeding that would determine whether Bruce would be destroyed, particularly where the case involved multiple alleged incidents, multiple witnesses, behavioral evidence, rescue placement alternatives, and conditions short of destruction.

236. Plaintiffs allege that Birgy's side was unable to present all material witnesses and evidence bearing on Bruce's behavior, handling, management, rescue placement, structured care, and conditions short of destruction.

237. Plaintiffs allege that material witnesses and evidence not heard included evidence concerning non-lethal placement, rescue transfer, structured care, and whether public health and safety could be protected without destruction.

238. The April 15 minute order states that Birgy's counsel requested additional time to allow a witness to appear and that the request was denied.

239. Plaintiffs allege that Birgy also requested that the proceeding be reopened so additional evidence could be heard, and that request was denied.

240. Plaintiffs allege that the denial of additional time and the denial of reopening prevented Birgy from presenting material evidence before Bruce was ordered destroyed.

241. After the de novo hearing, the Superior Court found Bruce vicious and ordered that Bruce be destroyed.

242. Plaintiffs do not plead these facts to ask this Court to sit as an appellate court over the April 15 determination or decide whether Judge Borrell correctly determined that Bruce was vicious.

243. Plaintiffs plead these facts because Defendants rely on the de novo proceeding as a cure for the earlier VCAS administrative-process defects.

244. Plaintiffs allege that the de novo hearing did not cure the prior VCAS administrative-process defects, did not adjudicate SPARC's retained rights, and did not provide constitutionally adequate process before Defendants sought to execute an irreversible destruction order.

245. Plaintiffs allege that Defendants now rely on the April 15 order as authority to destroy Bruce, even though Plaintiffs' federal due-process claims and SPARC's retained rights have not been adjudicated.

**G. Post-Order Proceedings and Federal Preservation Order**

246. The April 15, 2026 Order After Hearing included language stating that a party who disagreed with the determination could appeal within five days after receiving the order.

247. Birgy's counsel relied on that language and sought further review in Ventura County Superior Court.

248. On April 20, 2026, Birgy filed a Notice of Appeal from the April 15 Order After Hearing.

249. The clerk issued notice setting a further hearing on administrative appeal for April 30, 2026.

250. On April 21, 2026, the County objected to the April 30 hearing.

251. The County argued that the April 15 determination was final and conclusive and that the Superior Court lacked jurisdiction to conduct the April 30 hearing.

252. The County also requested correction of the April 15 Order After Hear-

ing to strike the appeal language.

253. Birgy opposed the County's objection and request for correction.

254. On April 30, 2026, the Superior Court found that it lacked jurisdiction to proceed with the April 30 hearing.

255. Plaintiffs allege that the April 30 proceeding did not adjudicate SPARC's retained rights, did not cure the prior administrative-process defects, and did not provide any alternative hearing on Bruce's destruction.

256. On May 6, 2026, Judge Borrell stated that the April 15 Order After Hearing would be modified by striking the language providing for appeal within five days.

257. On May 6, 2026, Birgy requested a stay of execution of the destruction order.

258. The Superior Court denied the request for a stay.

259. Plaintiffs allege that the April 15 hearing was conducted under severe time constraints, while the April 15 Order After Hearing included language stating that a party could appeal within five days.

260. Plaintiffs further allege that, after Birgy relied on that appeal language, the Superior Court later determined it lacked jurisdiction to proceed with the April 30 hearing and modified the April 15 order by striking the appeal language.

261. Plaintiffs allege that the additional review described in the April 15 order was therefore unavailable, leaving Plaintiffs with a destruction order entered after a de novo hearing that Plaintiffs allege was itself constitutionally inadequate.

262. Plaintiffs allege that the April 15 Order After Hearing did not itself set a specific date or time for Bruce's destruction.

263. Plaintiffs allege that VCAS nevertheless proceeded to schedule Bruce's destruction while Plaintiffs were pursuing further review and emergency relief.

264. Plaintiffs allege that VCAS's decision to schedule destruction, despite knowing that Plaintiffs were pursuing further review, created the immediate emer-

gency that required federal intervention.

265. Plaintiffs thereafter filed this federal action and sought emergency relief to prevent Bruce's destruction while Plaintiffs' federal constitutional claims could be adjudicated.

266. On May 15, 2026, this Court issued an order temporarily enjoining Defendants from executing Bruce's destruction judgment while the Court considered threshold jurisdictional issues.

267. On May 18, 2026, this Court granted the parties' stipulation extending the deadline to file a joint response addressing subject-matter jurisdiction.

268. Plaintiffs allege that Defendants continue to rely on the April 15 order as authority to destroy Bruce, subject only to the temporary federal preservation order currently in place.

269. Plaintiffs allege that without continued federal protection, Defendants may execute the destruction order before Plaintiffs' federal due-process claims and SPARC's retained rights are adjudicated.

**H. Expert Evidence, Rescue Placement, and Non-Lethal Alternatives**

270. Plaintiffs allege that evidence concerning Bruce's behavior, handling, housing instability, rescue placement, structured care, and conditions short of destruction was material to any constitutionally adequate process for determining whether Bruce had to be destroyed.

271. Plaintiffs allege that Defendants pursued destruction without providing constitutionally adequate process for Plaintiffs to present, test, and obtain adjudication of that evidence.

272. SPARC obtained an independent behavioral review from Dr. James W. Crosby, an experienced canine aggression and dangerous-dog expert.

273. Dr. Crosby concluded that Bruce's destruction is not necessary to protect public health and safety.

274. Dr. Crosby supported Bruce's transfer to an experienced and qualified rescue organization as a lawful non-destruction alternative.

275. Plaintiffs allege that Dr. Crosby's opinion was material because it supported a lawful non-destruction disposition that should have been presented, tested, and adjudicated before Defendants pursued or executed Bruce's destruction. Plaintiffs further allege that Plaintiffs were denied an adequate opportunity to bring Dr. Crosby's opinion before the decisionmaker; it was not considered and rejected on the merits through constitutionally adequate process.

276. Breanna Aguilera, founder of Angels Training and Boarding, evaluated Bruce at the VCAS shelter.

277. Aguilera has experience working with animals in shelter and home environments, including behavioral evaluations, rehabilitation planning, behavior modification, and assessment of behavioral risk factors.

278. Aguilera conducted behavioral testing from outside Bruce's kennel, including attempts to elicit a response through knocking, movement, clapping, and other environmental stimuli.

279. Aguilera did not observe barking, lunging, growling, fear-based reactivity, aggression, or other concerning behavior during that evaluation.

280. Aguilera observed Bruce as calm, non-reactive to environmental stimuli, and more consistent with a shut-down or depressed emotional state than with a dog presenting an immediate danger to people or other animals.

281. Plaintiffs allege that Aguilera's evaluation was material to any constitutionally adequate process for assessing Bruce's behavior, emotional state, risk, handling needs, and ability to be safely managed through non-lethal alternatives, but Plaintiffs were deprived of an adequate opportunity to present that evidence before VCAS sought Bruce's destruction.

282. Cappi Patterson of Buddy Nation was also a material witness. Plaintiffs allege that Buddy Nation has worked for decades with people experiencing home-

lessness and their pets.

283. Plaintiffs allege that Patterson's evidence was material because Bruce's case involved alleged incidents occurring during periods of housing loss, homelessness, instability, and disrupted access to support.

284. Plaintiffs allege that evidence from Patterson and Buddy Nation would have assisted in explaining how housing instability and lack of pet-support resources affected Bruce's environment, management, and the family's ability to stabilize his care, but Plaintiffs were deprived of an adequate opportunity to present that evidence before VCAS sought Bruce's destruction.

285. Plaintiffs allege that evidence concerning Rebecca Spradlin as a non-lethal placement alternative was also material to whether destruction was necessary.

286. Plaintiffs allege that Erick Krasnoff asked VCAS to allow Bruce to enter Spradlin's care as a non-lethal placement alternative before the VCAS administrative decision issued.

287. Plaintiffs further allege that, if VCAS would not allow that placement, Krasnoff requested that Bruce be returned or relinquished to SPARC, the rescue from which Bruce had been adopted.

288. Plaintiffs allege that Defendants did not adequately adjudicate whether Bruce could be safely maintained through placement with Spradlin, return to SPARC, transfer to an appropriate rescue, structured care, or other conditions short of destruction.

289. Plaintiffs allege that the compressed de novo hearing, together with the denial of additional time and denial of reopening, prevented Plaintiffs from presenting significant material evidence concerning expert behavioral review, shelter evaluation, homelessness-and-pet-support context, rescue placement, SPARC return, and other lawful non-destruction alternatives

290. Plaintiffs allege that West Coast Cane Corso Rescue, with expertise in

providing care for large-breed dogs, later made a formal request to pull Bruce for immediate release before Bruce's destruction occurred.

291. Plaintiffs allege that West Coast Cane Corso Rescue is a nonprofit rescue organization and an approved VCAS rescue partner.

292. Plaintiffs allege that West Coast's request is material because it confirmed that an experienced and qualified rescue placement was available before Bruce was destroyed. VCAS refused release based on the April 15 order, even though Plaintiffs allege that the process leading to that order was constitutionally inadequate and even though California law provides for release to qualified rescue organizations that request an animal before destruction.

293. Plaintiffs allege that the available expert behavioral evidence, shelter behavioral evaluation, homelessness-and-pet-support evidence, rescue placement options, and structured-care alternatives went directly to whether destruction was necessary under municipal and state law.

294. Plaintiffs allege that Defendants' failure to provide constitutionally adequate process deprived Plaintiffs of even a minimally adequate opportunity to present, test, and obtain adjudication of material evidence and alternatives before Defendants pursued the irreversible destruction of Bruce.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 — Fourth Amendment Unreasonable Seizure / Continued Seizure / Interference with Possessory Interests
### Against All Defendants

295. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

296. At all relevant times, Defendants acted under color of state law.

297. Bruce is companion-animal property in which Plaintiffs allege protected property and possessory interests.

298. A seizure of property occurs when government action substantially interferes with a person's possessory interests in that property.

299. Defendants substantially interfered with Plaintiffs' possessory interests in Bruce by obtaining custody of Bruce, impounding him, continuing to detain him, refusing to release or transfer him, and threatening to destroy him.

300. Plaintiffs allege that Bruce's entry into VCAS custody was not the result of informed, voluntary consent. Plaintiffs allege that Defendants deceptively or misleadingly induced Birgy's family to bring Bruce to VCAS after VCAS enforcement contact, after representing that Bruce needed to be brought in to begin the process and could receive veterinary evaluation or care at VCAS, after telling the family Bruce had to be impounded before a VCAS hearing could be scheduled, and after telling the family they had no choice but to bring him in.

301. Plaintiffs allege that Birgy's family did not understand that they had the right to refuse to surrender custody of Bruce absent a warrant, exigent circumstances, lawful seizure authority, or other lawful basis.

302. Plaintiffs allege that Defendants continued to hold Bruce after taking him into custody and then processed him through administrative and enforcement proceedings that did not provide constitutionally adequate process before Defendants sought his destruction.

303. Plaintiffs allege that Defendants' continued detention of Bruce and threatened destruction substantially interfere with Plaintiffs' possessory interests.

304. Plaintiffs allege that the threatened destruction of Bruce would permanently and irreversibly extinguish Plaintiffs' property and possessory interests in unique companion-animal property.

305. Plaintiffs allege that Defendants' seizure, continued detention, refusal to release or transfer, and threatened destruction of Bruce were unreasonable under the Fourth Amendment because Defendants acted without informed voluntary consent, without constitutionally adequate process, and without adjudicating SPARC's

retained rights before seeking to permanently extinguish Plaintiffs' interests in Bruce.

306. Plaintiffs allege that Defendants' conduct caused and continues to cause Plaintiffs constitutional injury, including deprivation of protected property and possessory interests, loss of use and possession of Bruce, emotional distress, litigation costs, and other damages according to proof.

307. Plaintiffs are entitled to damages, declaratory relief, injunctive relief, attorney's fees and costs under 42 U.S.C. § 1988, and all other appropriate relief.

**SECOND CAUSE OF ACTION**
**42 U.S.C. § 1983 — Fourteenth Amendment Procedural Due Process**
**Against All Defendants**

308. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

309. At all relevant times, Defendants acted under color of state law.

310. Plaintiffs allege protected property and possessory interests in Bruce.

311. Birgy alleges protected property and possessory interests arising from her adoption of Bruce, her relationship with Bruce as his owner, guardian, keeper, and/or person responsible for him, and Defendants' pursuit of dangerous-dog and nuisance proceedings against her based on that relationship.

312. SPARC alleges separate retained property, possessory, contractual, ownership, reversionary, future, and/or contract-based property rights in Bruce arising from its rescue of Bruce, its adoption agreement with Birgy, and its rights under that agreement.

313. Defendants deprived and threaten to deprive Plaintiffs of those protected interests by seizing, detaining, refusing to release or transfer, and seeking to destroy Bruce.

314. Defendants were required to provide constitutionally adequate process before depriving Plaintiffs of protected property and possessory interests, including

notice reasonably calculated to apprise Plaintiffs of the proceedings, disclosure of the evidence, opportunity to be heard, opportunity to present witnesses and evidence, and opportunity to test the evidence.

315. Plaintiffs allege that Defendants failed to provide constitutionally adequate process before seeking Bruce's destruction.

316. As to Birgy, Defendants failed to provide constitutionally adequate process by, among other things, failing to provide timely and complete disclosure of the evidence, failing to provide constitutionally adequate notice of proceedings, failing to provide an adequate opportunity to prepare and respond, failing to provide an adequate opportunity to present material evidence and witnesses, and failing to provide an adequate opportunity to test the evidence used against her.

317. Plaintiffs allege that Birgy was deprived of even a minimally adequate opportunity to present material evidence concerning Bruce's behavior, handling, housing instability, emotional state, rescue placement, structured care, and conditions short of destruction.

318. Plaintiffs allege that material witnesses were unable to appear and provide evidence at the VCAS administrative hearing because of technical difficulties or access problems with the remote Zoom format.

319. Plaintiffs allege that the de novo hearing did not cure the prior VCAS administrative-process defects because it was severely time-limited, did not allow Birgy an adequate opportunity to present all material witnesses and evidence, and resulted in a destruction order without adequate adjudication of available non-destruction alternatives.

320. As to SPARC, Defendants failed to provide constitutionally adequate process by failing to formally notice, serve, join, or hear SPARC as a rights-holder before seeking or enforcing an order that would permanently extinguish SPARC's retained rights in Bruce.

321. Plaintiffs allege that Defendants had actual or constructive notice of

SPARC's legally relevant interests in Bruce before destruction was ordered or pursued, including through VCAS records connecting Bruce to SPARC, VCAS's contact with SPARC for records, VCAS's known practice regarding SPARC-origin dogs, and written communications identifying SPARC as Bruce's rescue of origin and a non-lethal return or placement option.

322. Plaintiffs allege that Jean Marie Webster's personal appearance at the VCAS administrative hearing did not provide SPARC constitutionally adequate process. Webster's appearance did not make SPARC a party, did not constitute formal notice to SPARC, did not waive SPARC's rights, and did not adjudicate SPARC's retained contractual, possessory, ownership, reversionary, future, and/or contract-based property rights in Bruce.

323. Plaintiffs allege that no Oxnard administrative proceeding, VCAS administrative proceeding, de novo hearing, or post-order proceeding adjudicated SPARC's retained rights before Defendants sought to execute Bruce's destruction.

324. Plaintiffs allege that Defendants' process failures were especially serious because destruction is irreversible, because Bruce is unique companion-animal property, and because the VCAS administrative order also imposed additional deprivations against Birgy, including a prohibition on owning, controlling, or having custody of any dog for three years from the date the order became final.

325. Plaintiffs allege that Defendants' conduct deprived and threatens to deprive Plaintiffs of protected property and possessory interests without due process of law in violation of the Fourteenth Amendment.

326. Plaintiffs allege that Defendants' conduct caused and continues to cause Plaintiffs constitutional injury, including deprivation of protected property and possessory interests, loss of use and possession of Bruce, emotional distress, litigation costs, and other damages according to proof.

327. Plaintiffs are entitled to damages, declaratory relief, injunctive relief, attorney's fees and costs under 42 U.S.C. § 1988, and all other appropriate relief.

## THIRD CAUSE OF ACTION

**42 U.S.C. § 1983 — Fifth Amendment Takings / Destruction of SPARC's Contract-Based Property Rights, Right to Exclude, and Reversionary Interests Against All Defendants**

328. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

329. At all relevant times, Defendants acted under color of state law.

330. SPARC alleges that its adoption agreement created protected property interests in Bruce, including contractual rights, future and reversionary rights, the right to recover or resume custody under the agreement, and the right to exclude unauthorized disposition, transfer, relinquishment, or destruction inconsistent with those rights.

331. SPARC alleges that those rights were part of its property interest in Bruce and were not merely abstract expectations.

332. Defendants knew or had reason to know that Bruce was a SPARC-origin dog and that SPARC had legally relevant interests in Bruce before Defendants pursued and sought to execute Bruce's destruction.

333. Defendants nevertheless failed to notice, join, hear, or adjudicate SPARC as a rights-holder before seeking to permanently destroy Bruce.

334. Plaintiffs allege that Defendants' threatened destruction of Bruce would permanently extinguish SPARC's retained contract-based property rights, including SPARC's future and reversionary interests, right to recover or resume custody, right of first refusal or return, and right to exclude unauthorized disposition or destruction.

335. Plaintiffs allege that Defendants' threatened destruction of Bruce constitutes, or in the alternative would constitute, a taking, destruction, or permanent extinguishment of SPARC's retained contract-based property rights in violation of the Fifth Amendment Takings Clause, as applied to state and local governments

through the Fourteenth Amendment.

336. Plaintiffs allege that companion animals are constitutionally protected property and may be regulated, but not arbitrarily destroyed by government without lawful adjudication and constitutionally adequate process. Bruce's status as unique companion-animal property makes the threatened deprivation especially severe because destruction would eliminate the specific living animal and the retained property rights attached to him.

337. Plaintiffs allege that Defendants cannot adequately monetize Bruce's value or SPARC's retained property rights through ordinary market-value principles. Bruce is unique companion-animal property, and destruction would permanently eliminate the specific living animal and the retained contract-based property rights attached to him, making ordinary just compensation an inadequate substitute for constitutionally adequate process and injunctive relief.

338. Plaintiffs allege that Defendants have not provided lawful adjudication or constitutionally adequate process before seeking to permanently extinguish SPARC's retained property rights.

339. Plaintiffs allege that Defendants' conduct caused and threatens to cause SPARC constitutional injury, including permanent destruction of its property rights in Bruce, loss of possession, loss of use, loss of contractual rights, and other damages according to proof.

340. Plaintiffs are entitled to damages, declaratory relief, injunctive relief, attorney's fees and costs under 42 U.S.C. § 1988, and all other appropriate relief.

## FOURTH CAUSE OF ACTION

**42 U.S.C. § 1983 — Unconstitutional As-Applied Procedures / Dangerous-Dog and Nuisance Proceedings as Applied Against All Defendants**

341. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

342. At all relevant times, Defendants acted under color of state law.

343. Plaintiffs do not allege in this cause of action that every dangerous-dog, nuisance, or animal-control procedure is unconstitutional in all applications.

344. Plaintiffs allege that Defendants' dangerous-dog, nuisance, administrative-hearing, and enforcement procedures were unconstitutional as applied to Plaintiffs and Bruce.

345. As applied here, Defendants' procedures permitted or resulted in the threatened irreversible destruction of Bruce without constitutionally adequate notice, disclosure of the evidence, opportunity to be heard, opportunity to present and test evidence, adjudication of lawful non-destruction alternatives, and adjudication of SPARC's retained rights.

346. Plaintiffs allege that the procedures used by Oxnard deprived Plaintiffs of constitutionally adequate process by failing to provide timely notice, failing to provide the evidence and hearing materials used against Plaintiffs, failing to provide an adequate opportunity to attend and participate, failing to provide an adequate opportunity to cross-examine or otherwise test evidence, and failing to provide adequate written decisions before Plaintiffs' protected interests were impaired.

347. Plaintiffs allege that the procedures used by VCAS deprived Plaintiffs of constitutionally adequate process by failing to provide timely disclosure of the evidentiary record, failing to provide an adequate opportunity to present material witnesses and evidence, conducting the administrative hearing in a manner affected by remote-access and technical limitations, and failing to formally notice, join, hear, or adjudicate SPARC as a rights-holder.

348. Plaintiffs allege that the de novo hearing did not cure the unconstitutional application of Defendants' procedures because it was severely time-limited, did not address the Oxnard proceedings, did not adjudicate SPARC's retained rights, and did not provide an adequate opportunity to present and test all material evidence before Bruce was ordered destroyed.

349. Plaintiffs allege that Defendants' procedures, as applied, failed to provide an adequate opportunity to present and obtain adjudication of lawful non-destruction alternatives, including return to SPARC, placement with an appropriate caregiver, transfer to a qualified rescue organization, structured care, or other conditions short of destruction.

350. Plaintiffs allege that Defendants' failure to provide these opportunities resulted in an arbitrary decision to destroy unique companion-animal property without constitutionally adequate process. Even if Bruce could not return to Birgy's physical custody, Birgy retained a protected interest in Bruce's continued life, lawful disposition, and protection from arbitrary destruction.

351. Plaintiffs allege that Defendants' procedures, as applied, failed to account for the severity and irreversibility of the deprivation at issue: Bruce's destruction and the permanent extinguishment of Plaintiffs' protected interests in him.

352. Plaintiffs allege that Defendants' procedures, as applied, also failed to account for the additional consequences imposed on Birgy, including the VCAS administrative order's three-year prohibition against owning, controlling, or having custody of any dog.

353. Plaintiffs allege that Defendants' procedures, as applied, used or permitted an insufficient standard of proof before authorizing Bruce's destruction and imposing additional deprivations affecting Birgy's rights.

354. Plaintiffs allege that the dangerous-dog and nuisance procedures, as applied, allowed Defendants to pursue destruction without adequate consideration of expert behavioral evidence, shelter behavioral evaluation evidence, homelessness-

and-pet-support evidence, rescue placement options, SPARC return, or other lawful non-destruction alternatives.

355. Plaintiffs allege that Defendants' application of these procedures was unreasonable, arbitrary, and constitutionally inadequate in light of the interests at stake and the risk of erroneous deprivation.

356. Plaintiffs allege that Defendants' conduct deprived and threatens to deprive Plaintiffs of rights secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

357. Plaintiffs allege that Defendants' conduct caused and continues to cause Plaintiffs constitutional injury, including deprivation of protected property and possessory interests, loss of use and possession of Bruce, emotional distress, litigation costs, and other damages according to proof.

358. Plaintiffs are entitled to damages, declaratory relief, injunctive relief, attorney's fees and costs under 42 U.S.C. § 1988, and all other appropriate relief.

## FIFTH CAUSE OF ACTION
### 42 U.S.C. § 1983 — Municipal Liability / Monell Against Ventura County, VCAS, and City of Oxnard

359. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

360. Plaintiffs allege that Ventura County, VCAS, and the City of Oxnard are public entities, municipal entities, agencies, departments, or governmental bodies acting under color of state law.

361. Plaintiffs allege that the constitutional violations described in this complaint were caused by official policies, customs, practices, procedures, decisions, acts, omissions, delegation of authority, ratification, and/or failures to train, supervise, or correct.

362. Plaintiffs allege that Defendants maintained or applied policies, cus-

toms, practices, or procedures that permitted animal-control and dangerous-dog proceedings to proceed without constitutionally adequate notice, disclosure of the evidence, opportunity to be heard, opportunity to present and test evidence, and adjudication of third-party rights before destruction was pursued.

363. Plaintiffs allege that Defendants maintained or applied policies, customs, practices, or procedures that permitted municipal administrative proceedings, County administrative proceedings, and court enforcement efforts to operate in an overlapping and confusing sequence without ensuring that affected rights-holders received notice, party status, evidence, hearing rights, and adjudication before protected interests were impaired.

364. Plaintiffs allege that Defendants maintained or applied policies, customs, practices, or procedures that permitted Bruce to be held, processed for destruction, and scheduled for destruction without constitutionally adequate process and without adjudicating SPARC's retained contractual, possessory, ownership, reversionary, future, and contract-based property rights.

365. Plaintiffs allege that Defendants maintained or applied policies, customs, practices, or procedures that permitted Defendants to treat Jean Marie Webster's personal appearance at the VCAS administrative hearing as if it supplied SPARC with notice, party status, participation, waiver, or adjudication, even though SPARC was not formally noticed, served, joined, represented, or heard as a rights-holder.

366. Plaintiffs allege that Defendants maintained or applied policies, customs, practices, or procedures that permitted Defendants to treat Jean Marie Webster's personal appearance at the VCAS administrative hearing as if it supplied SPARC with notice, party status, participation, waiver, or adjudication, even though SPARC was not formally noticed, served, joined, represented, or heard as a rights-holder.

367. Plaintiffs allege that Defendants maintained or applied policies, cus-

toms, practices, or procedures that permitted destruction to be pursued without adequate consideration or adjudication of lawful non-destruction alternatives, including return to SPARC, transfer to an appropriate rescue, structured care, or conditions short of destruction..

368. Plaintiffs allege that Defendants' final policymakers, authorized decisionmakers, hearing officers, officials, employees, agents, and/or designees made or ratified the decisions and procedures challenged in this complaint.

369. Plaintiffs allege that Defendants knew or should have known that their policies, customs, practices, procedures, and/or omissions created an obvious risk that persons with protected property and possessory interests in companion animals would be deprived of those interests without constitutionally adequate process.

370. Plaintiffs allege that Defendants failed to train, supervise, and/or correct officials, employees, hearing officers, agents, designees, and policymakers concerning constitutionally adequate notice, disclosure of the evidence, hearing procedures, treatment of rescue-origin animals, third-party rights, non-lethal disposition alternatives, and preservation of protected property and possessory interests before destruction.

371. Plaintiffs allege that the policies, customs, practices, procedures, decisions, acts, omissions, delegation of authority, ratification, and/or failures to train or supervise described above were moving forces behind the constitutional violations alleged in this complaint.

372. Plaintiffs allege that Defendants' municipal liability caused and continues to cause Plaintiffs constitutional injury, including deprivation of protected property and possessory interests, loss of use and possession of Bruce, emotional distress, litigation costs, and other damages according to proof.

373. Plaintiffs are entitled to damages, declaratory relief, injunctive relief, attorney's fees and costs under 42 U.S.C. § 1988, and all other appropriate relief.

## SIXTH CAUSE OF ACTION
### Declaratory and Injunctive Relief Against All Defendants

374. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

375. An actual controversy exists between Plaintiffs and Defendants concerning Plaintiffs' federal constitutional rights, Defendants' administrative and enforcement conduct, Defendants' continued detention and threatened destruction of Bruce, and the adequacy of the process provided before Plaintiffs' protected interests are permanently extinguished.

376. Plaintiffs allege that Defendants contend they may continue holding Bruce and may destroy him based on the administrative and enforcement sequence described in this complaint.

377. Plaintiffs allege that Defendants further contend that the prior proceedings were sufficient to authorize Bruce's destruction.

378. Plaintiffs dispute those contentions.

379. Plaintiffs allege that the right to own and possess property is grounded in the Constitution, and that the United States Supreme Court has long recognized property rights as central to liberty and has protected in particular the right to exclude others from illegitimate exercise of control. See Kaiser Aetna v. U.S., 444 U.S. 164 (1979). Plaintiffs further allege that companion animals like Bruce occupy a unique place in property law because they are both legally protected property and family companions. In 2023, a Pew Research Center study found that 97% of U.S. pet owners consider their pets to be family members, with 51% saying their pets are as much a part of their family as a human family member. https://www.pewresearch.org/?p=8018

380. Plaintiffs allege that there is no public-safety gain from destroying a dog who can be safely maintained through lawful non-destruction alternatives, which required Defendants to exercise greater care to consider those alternatives

before pursuing Bruce's destruction. Defendants may not destroy Bruce unless and until Plaintiffs receive constitutionally adequate process, including adjudication of Plaintiffs' protected property and possessory interests, SPARC's retained rights, SPARC's contract-based property rights, and full consideration of lawful non-destruction alternatives sufficient to determine whether public safety can be protected without destruction.

381. Plaintiffs seek a declaration that Defendants' seizure, continued detention, threatened destruction, and administrative/enforcement process violated or threaten to violate Plaintiffs' rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

382. Plaintiffs seek a declaration that SPARC's retained contractual, possessory, ownership, reversionary, future, and/or contract-based property rights in Bruce were not adjudicated in the Oxnard administrative proceedings, the VCAS administrative proceeding, the April 15 de novo hearing, or the post-order proceedings.

383. Plaintiffs seek a declaration that Jean Marie Webster's personal appearance at the VCAS administrative hearing did not make SPARC a party, did not constitute formal notice to SPARC, did not waive SPARC's rights, and did not adjudicate SPARC's retained rights.

384. Plaintiffs seek injunctive relief prohibiting Defendants from destroying Bruce unless and until Plaintiffs receive constitutionally adequate process and SPARC's retained rights are adjudicated.

385. Plaintiffs seek injunctive relief requiring Defendants to maintain Bruce alive and protected from destruction while Plaintiffs' federal claims are adjudicated.

386. Plaintiffs further seek, if necessary and appropriate to protect Bruce's welfare and Plaintiffs' rights during this action, an order requiring Defendants to release or transfer Bruce to SPARC, West Coast Cane Corso Rescue, or another

qualified placement under conditions approved by the Court.

387. Plaintiffs seek injunctive relief requiring Defendants to refrain from relying on constitutionally inadequate administrative or enforcement procedures to permanently extinguish Plaintiffs' protected interests in Bruce.

388. Plaintiffs seek all further declaratory and injunctive relief necessary to protect Plaintiffs' federal rights and prevent Bruce's destruction before those rights are adjudicated.

389. Plaintiffs allege that declaratory and injunctive relief is necessary because destruction of Bruce would permanently extinguish Plaintiffs' protected interests and no later remedy could restore Bruce's life.

390. Plaintiffs are entitled to declaratory relief, temporary, preliminary, and permanent injunctive relief, attorney's fees and costs under 42 U.S.C. § 1988, and all other appropriate relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for relief as follows:

1. For a declaration that Defendants' seizure, continued detention, threatened destruction, and administrative/enforcement process violated or threaten to violate Plaintiffs' rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution;

2. For a declaration that Plaintiffs have protected property and possessory interests in Bruce;

3. For a declaration that SPARC has protected contract-based property interests in Bruce, including contractual rights, possessory interests, ownership and/or reversionary interests, future interests, the right to recover or resume custody under the adoption agreement, and the right to exclude unauthorized disposition or destruction inconsistent with those rights;

4. For a declaration that SPARC's retained contractual, possessory, ownership, reversionary, future, and/or contract-based property rights in Bruce were not adjudicated in the Oxnard administrative proceedings, the VCAS administrative proceeding, the April 15 de novo hearing, or the post-order proceedings;

5. For a declaration that Defendants may not treat the Oxnard administrative proceedings, the VCAS administrative proceeding, the April 15 de novo hearing, or the post-order proceedings as having adjudicated, waived, or extinguished SPARC's retained rights in Bruce;

6. For a declaration that Jean Marie Webster's personal appearance at the VCAS administrative hearing did not make SPARC a party, did not constitute formal notice to SPARC, did not waive SPARC's rights, and did not adjudicate SPARC's retained rights;

7. For a declaration that Defendants' dangerous-dog, nuisance, administrative-hearing, and enforcement procedures, as applied to Plaintiffs and Bruce, failed to provide constitutionally adequate process before Defendants sought Bruce's destruction;

8. For a declaration that Defendants may not destroy Bruce unless and until Plaintiffs receive constitutionally adequate process, including adjudication of Plaintiffs' protected interests, SPARC's retained rights, SPARC's contract-based property rights, and lawful non-destruction alternatives;

9. For a declaration that Defendants may not permanently extinguish SPARC's contract-based property rights, including its retained reversionary and future interests, right to recover or resume custody, and right to exclude unauthorized disposition or destruction, without just compensation and constitutionally adequate process;

10. For temporary, preliminary, and permanent injunctive relief prohibiting Defendants from destroying Bruce unless and until Plaintiffs receive constitutionally adequate process and SPARC's retained rights are adjudicated;

11. For an order requiring Defendants to maintain Bruce alive and protected from destruction while Plaintiffs' federal claims are adjudicated;

12. For an order, if necessary and appropriate to protect Bruce's welfare and Plaintiffs' rights during this action, requiring Defendants to release or transfer Bruce to SPARC, West Coast Cane Corso Rescue, or another qualified placement under conditions approved by the Court;

13. For an order requiring Defendants to preserve all records, recordings, notices, emails, text messages, internal communications, external communications, hearing materials, kennel records, animal-history records, field notes, body-worn camera footage, dispatch records, electronically stored information, and other documents or communications relating to Bruce, Plaintiffs, SPARC, Birgy, the Oxnard proceedings, the VCAS proceeding, the April 15 hearing, the post-order proceedings, and any decision to detain, transfer, release, preserve, or destroy Bruce;

14. For an order requiring Defendants, while Bruce remains in their custody, to provide appropriate veterinary care, behavioral care, enrichment, humane housing, and care consistent with Bruce's welfare;

15. For an order permitting Plaintiffs, through qualified veterinary, behavioral, rescue, or placement professionals, reasonable access to evaluate Bruce and assess appropriate non-destruction placement or care options, subject to reasonable safety conditions approved by the Court;

16. For injunctive relief prohibiting Defendants from relying on constitutionally inadequate administrative or enforcement procedures to permanently extinguish Plaintiffs' protected interests in Bruce;

17. For compensatory damages according to proof;

18. For just compensation, or other appropriate relief, to the extent Defendants' conduct is found to constitute a taking or permanent extinguishment of Plaintiffs' property rights within the meaning of the Fifth Amendment Takings Clause, as incorporated against state and local governments through the Fourteenth

Amendment;

19. For reasonable attorney's fees and costs under 42 U.S.C. § 1988 and any other applicable law;

20. For a jury trial on all issues so triable; and

21. For such other and further relief as the Court deems just and proper.

DATED: June 1, 2026

Respectfully Submitted,

THE ANIMAL LAW OFFCE

Christine Kelly
Attorney for Plaintiffs

## VERIFICATION

I, Claire Birgy, am a plaintiff for the above referenced case and I have read the contents of the foregoing **VERIFIED FIRST AMENDED COMPLAINT AGAINST VENTURA COUNTY ANIMAL SERVICES and CITY OF OXNARD FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF** and know that I have personal knowledge of its contents of facts contained herein. I declare under penalty of perjury of the laws of the state of California that the statements made herein are true and correct and would testify to the same except those statements which are made on information and belief, and as to those statements, I believe them to be true. Executed on June 1, 2026

Signed by:
760B51BBA11543F...

Claire Birgy

## VERIFICATION

I, TJ Convertino, am the President of Santa Paula Animal Rescue Center, Inc. (SPARC) who is a plaintiff in the above described case and I have read the contents of the foregoing **VERIFIED FIRST AMENDED COMPLAINT AGAINST VENTURA COUNTY ANIMAL SERVICES and CITY OF OXNARD FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF** and know that I have personal knowledge of its contents of facts contained herein. I declare under penalty of perjury of the laws of the state of California that the statements made herein are true and correct and would testify to the same except those statements which are made on information and belief, and as to those statements, I believe them to be true. Executed on June 1, 2026

Signed by:
TJ Convertino
1314EA4322C9489...

SPARC
TJ Convertino President of SPARC,
Signing on behalf of SPARC

## DECLARATION OF CHRISTINE KELLY

I, Christine Kelly, declare as follows:

1. I am counsel for Plaintiffs Santa Paula Animal Rescue Center, Inc. and Claire Birgy in the above-captioned action.

2. I submit this declaration to correct an error in the original Verified Complaint filed on May 14, 2026.

3. The original Verified Complaint incorrectly identified Jean Marie Webster as the President of Santa Paula Animal Rescue Center, Inc. That statement was inaccurate.

4. The error was mine. It was made during an emergency filing prepared under severe time pressure after Ventura scheduled Bruce for destruction, and after I had only recently become involved in the matter.

5. I did not intend to misstate Ms. Webster's role or mislead the Court, the parties, or counsel. The First Amended Complaint corrects that error and clarifies Ms. Webster's role and lack of authority to bind SPARC in the prior administrative proceedings.

6. I understand that the First Amended Complaint supersedes and replaces the original Verified Complaint.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 1, 2026, at San Rafael, California.

/s/ Christine Kelly
Christine Kelly

Docusign Envelope ID: 36C76A7E-D2A0-8AA2-838C-0771D6FC6EFC


PROOF OF SERVICE
FACSIMILE AND ELECTRONIC SERVICE (CCP § 1013b)
SPARC VS. VENTURA COUNTY ANIMAL SERVICES et al
Case No. 2:26-cv-05196-SPG-E

I, Christine Kelly, do hereby declare: I am over the age of 18 years and not a party to this within action. My business address is: 454 Las Gallinas Ave #106, San Rafael, CA 94903.

On the date set forth below, I served on all interested parties in this action the foregoing documents described as:

VERIFIED FIRST AMENDED COMPLAINT AGAINST VENTURA COUNTY, VENTURA COUNTY ANIMAL SERVICES, and CITY OF OXNARD FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF

by placing a true copy and addressed as follows:

| **Attorneys for Defendant Ventura County** | **Attorneys for Defendant Oxnard City** | **More Attorneys for Defendant Ventura County** |
|---|---|---|
| Marina Porche<br>marina.porche@venturacounty.gov<br>tiffany.north@venturacounty.gov<br>brett.mcmurdo@venturacounty.gov | City Attorney Stephen M. Fischer and Michelle McCarron<br>city.attorney@oxnard.org<br>michelle.mccarron@oxnard.org<br>stephen.fischer@oxnard.org<br>CITY OF OXNARD<br>Office of the City Attorney<br>305 West Third Street<br>First Floor, East Wing<br>Oxnard, CA 93030<br>Facsimile: (805) 385-7423 | Eugene P. Ramirez<br>eugene.ramirez@manningkass.com<br>Kelly Duncan<br>kelly.Duncan@manningkass.com<br>Thomas Livingston<br>thomas.Livingston@manningkass.com<br>**MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP**<br>801 S. Figueroa St., 15th Floor<br>Los Angeles, California 90017-3012<br>Facsimile: (213) 624-6999 |

X___BY EMAIL OR ELECTRONIC TRANSMISSION: I caused the document(s) to be sent from my email address to the addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.Executed on June 1, 2026 in Marin County, California.

C Kelly

______________________
Christine Kelly