Eugene P. Ramirez (State Bar No. 134865)
*eugene.ramirez@manningkass.com*
Kelly Duncan (State Bar No. 216181)
*Kelly.Duncan@manningkass.com*
Thomas B. Livingston (State Bar No. 335783)
*Thomas.Livingston@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St., 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants
COUNTY OF VENTURA and
VENTURA COUNTY ANIMAL
SERVICES

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| SANTA PAULA ANIMAL RESCUE CENTER, INC. AND CLAIRE BIRGY, THE GUARDIANS OF CANINE COMPANION BRUCE,<br><br>Plaintiff,<br><br>v.<br><br>VENTURA COUNTY, VENTURA COUNTY ANIMAL SERVICES, CITY OF OXNARD AND DOES 1-10,<br><br>Defendant. | Case No. 2:26-cv-05196-SPG-E<br><br>District Judge: Hon. Sherilyn Peace Garnett<br>Magistrate Judge: Hon. Charles F. Eick<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT TO DEFENDANTS VENTURA COUNTY AND VENTURA COUNTY ANIMAL SERVICES: MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*Filed Concurrently with Declaration of Thomas B. Livingston and Memorandum of Points and Authorities*]<br><br>Date: August 12, 2026<br>Time: 1:30 p.m.<br>Crtm.: 5C |

**TO THE HONORABLE COURT, PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on August 12, 2026, at 1:30 p.m., or as soon

thereafter as counsel may be heard, counsel for Defendants County of Ventura (the "County") and Ventura County Animal Services ("VCAS") (collectively, the "Defendants") shall appear before the Honorable Sherilyn Peace Garnett or any judge sitting in her stead in Courtroom 5C, 5th Floor of the United States Courthouse for the United States District Court for the Central District of California located at 350 West First Street, Los Angeles, CA 90012, and will and hereby move this Court for an order granting dismissal of the operative First Amended Complaint (the "FAC") pursuant to Federal Rules of Civil Procedure Rule 12(b)(1) and 12(b)(6).

This action concerns an administrative order and subsequent *de novo* review of that order declaring the Plaintiffs' dog as vicious and ordering it to be euthanized. On June 1, 2026, Plaintiffs filed the FAC alleging new facts that ostensibly resolved subject matter jurisdiction issues the parties submitted a joint supplemental brief for on the same day. However, a careful reading of the FAC makes clear these new factual allegations do not resolve the subject matter jurisdiction issues that were present in the original Complaint. Plaintiffs seek the same relief as they did in the original Complaint to essentially have the Court overturn the administrative order and *de novo* review of that order based on alleged due process violations committed by the administrative officer and the Superior Court that conducted the *de novo* review. This is the exact type of relief the Court lacks subject matter jurisdiction over under the *Rooker-Feldman* doctrine prohibiting District Courts from hearing appeals of state court judgments.

Notwithstanding the Court's lack of subject matter jurisdiction over these claims, the FAC also fails to state a cognizable form of relief that can be granted by the Court. Plaintiffs seek a declaration that Defendants' "administrative/enforcement" process failed to provide them constitutionally adequate process before the administration officer issued its ruling. Plaintiffs also seek an injunction to prevent Defendants from relying on "constitutionally inadequate administrative or enforcement procedures" in seeking to obtain an order to destroy Bruce.

Notwithstanding the fact that the Court cannot grant this relief based on its lack of subject matter jurisdiction over the claims, granting this relief would not resolve any legal rights or disputes between the parties as Defendants are not responsible for enforcing the procedures that are issue in the FAC. Moreover, even assuming the Court had some jurisdictional basis for granting the requested relief, there would be numerous issues the Court would have to resolve before granting the relief, namely the effect it would have on the prior administrative decision and the Superior Court's *de novo* review. As a result, the FAC fails to state a cognizable form of relief against Defendants.

This Motion is based on: (1) this Notice of Motion and the accompanying Memorandum of Points and Authorities; (2) the Declaration of Thomas B. Livingston in Support of the Motion filed herewith; (3) the pleadings, motions, and exhibits on file herein; and (4) on the argument of counsel to be presented at the time of hearing.

Pursuant to the Central District Court's Local Rules, Rule 7-3, Defendants' counsel attempted to meet and confer with Plaintiffs' counsel seven days prior to Defendants' responsive pleading deadline. However, Plaintiffs' counsel did not appear for a previously scheduled teleconference and did not provide her availability to meet and confer within the deadline. Nevertheless, Plaintiffs' counsel and Defendants' counsel met and conferred prior to the filing of this Motion in which Defendants' counsel outlined its legal basis for why the Court lacked subject matter jurisdiction over the claims and why the FAC failed to state a cognizable legal theory of relief. On this basis, the Defendants requested that they be dismissed from the FAC with prejudice based on their contention that these defects could not be cured through subsequent amendment. Plaintiffs' counsel did not agree to Defendants' request, which necessitates this Motion.



MK MANNING | KASS

DATED: June 15, 2026

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: *\/s/ Kelly Duncan*
Kelly Duncan
Thomas B. Livingston
Attorneys for Defendants
COUNTY OF VENTURA and
VENTURA COUNTY ANIMAL
SERVICES

MANNING | KASS

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

III. MEET AND CONFER EFFORTS ..... 4

IV. LEGAL STANDARD ..... 5

V. THE COURT LACKS SUBJECT MATTER JURISDICTION AS PLAINTIFFS' ALLEGATIONS CENTER ON STATE COURT ERROR AND THERE IS NO STATUTORY AUTHORITY CONFERRING JURISDICTION ..... 5

A. VCAS March 2026 Hearing ..... 7

B. Ventura County Superior Court April 15, 2026, Hearing ..... 8

C. The California Food and Agriculture Code Provides the Exclusive Remedy for Appealing the VCAS Hearing ..... 10

VI. THE FIRST AMENDED COMPLAINT CONTAINS NO COGNIZABLE OR PRACTICAL FORM OF RELIEF FOR THE COURT TO GRANT ..... 11

VII. CONCLUSION ..... 13

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,
300 U.S. 227, 240–41 (1937) ........ 11

*Anchor Marine Repair Co. v. Magnan*,
93 Cal.App.4th 525, 528 (Cal. Ct. App. 2001 (internal citations omitted)........ 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 555 (2007) ........ 11

*Benavidez v. County of San Diego*,
993 F.3d 1134, 1140 (9th Cir. 2021)........ 7

*Erickson-Hall Constr. Co. v. Scottsdale Ins. Co.*,
369 F.Supp.3d 1022, 1038 (S.D. Cal. Feb. 20, 2019)........ 11

*Fid. & Cas. Co. v. Reserve Ins. Co.*,
596 F.2d 914, 916 (9th Cir.1979)........ 11

*Kokkonen v. Guardian Life Ins. Co. of America*,
511 U.S. 375, 376 (1994) ........ 5

*Kougasian v. TMSL, Inc.*,
359 F.3d 1136, 1142 (9th Cir. 2004)........ 6

*Miroth v. County of Trinity*,
136 F.4th 1141, 1146 (9th Cir. 2025)........ 6

*Nelson v. Fraser*,
2020 WL 11626077 at * 1, 4 (C.D. Cal. Mar. 9, 2020) ........ 13

**STATUTES**

28 U.S.C. § 1257(a) ........ 6

Cal. Food & Agr. Code § 31622(a) ........ 10

**RULES**

Fed. R. Civ. P. 12(b) ........ 5, 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The First Amended Complaint (the "FAC") attempts to frame the central issue of this case as one dealing with alleged due process violations. What Plaintiffs Claire Birgy ("Birgy") and Santa Paula Animal Rescue Center, Inc. ("SPARC") (collectively, "Plaintiffs") truly seek, however, is to have the Court effectively overturn the County of Ventura's administrative holding (the "Order") that Bruce[1] is a vicious animal, and the County of Ventura Superior Court's (the "Superior Court") *de novo* review and affirmation of the Order.

Throughout the FAC, Plaintiffs allege various due process violations allegedly committed by Defendants County of Ventura (the "County") and Ventura County Animal Services ("VCAS") (collectively, the "Defendants") during the administrative hearing. Plaintiffs also allege various due process violations that occurred during the Superior Court hearing. Plaintiffs allege these violations unlawfully deprived them of Bruce and that this Court must issue declaratory and injunctive relief to resolve these issues, including a declaration that *Defendants'* "administrative-hearing, and enforcement procedures" failed to provide "constitutionally adequate process" and an injunction prohibiting *Defendants* from "relying on constitutionally inadequate administrative or enforcement procedures to permanently extinguish Plaintiffs' protected interests in Bruce." *See* ECF No. 18 at ¶¶ 7 & 16[2] (emphasis added).

Yet, a careful reading of these facts and the requested relief make abundantly clear that: (1) Plaintiffs' complaints lie with how the County administrative hearing and the Superior Court *de novo* review were *conducted*, not how alleged misconduct

[1] All references to "Bruce" shall refer to the dog at issue in the Order and whom the Plaintiffs claim a protected property interest in.

[2] All references to "ECF No. 18" shall be in reference to the First Amended Complaint filed June 1, 2026, and the corresponding paragraph and page number.

by Defendants affected the results of those hearings; and (2) Plaintiffs' requested relief fails to adjudicate legal rights and disputes between the parties and is simply impractical to enforce. The former is clearly subject to the *Rooker-Feldman* doctrine as it indirectly seeks to have the Court overturn the Order and the Superior Court's affirmation of the Order that the Court lacks subject matter jurisdiction over. The latter clearly demonstrates that Plaintiffs fail to assert cognizable theories of relief the Court can grant. Consequently, the FAC cannot be cured through subsequent amendment and it must be dismissed in its entirety with prejudice.

## II. FACTUAL BACKGROUND

SPARC originally rescued Bruce as a puppy and later entered into a foster-to-adopt agreement with Birgy in June 2023. *See Id.* at ¶¶ 75-77. As part of the agreement, Birgy was to notify SPARC if she could no longer care for Bruce and SPARC retained possessory rights in Bruce if Birgy could no longer care for him. *See Id.* at ¶¶ 78, 83. Between early 2024 and September 2025, Bruce was involved two biting incidents and was quarantined by the VCAS after each incident. *See Id.* at ¶¶ 93-95, 98-101. In February 2026, Birgy surrendered Bruce to VCAS for quarantine pending a hearing, and in March 2026 a field services manager with VCAS signed a petition seeking a determination that Bruce be declared vicious and requested an order authorizing Bruce's destruction (the "Petition"). *See Id.* at ¶¶ 110-111, 182-183. Plaintiffs allege an 89-page evidentiary packet was attached to the Petition that was never delivered to Birgy or SPARC and that Birgy was not given an adequate and timely opportunity to review the evidentiary packet and other materials before the administrative hearing. *See Id.* at ¶¶ 184-187.[3]

On or around March 24, 2026, the administrative hearing was conducted by Zoom that Birgy attended. *See Id.* at ¶¶ 193-195. Plaintiffs allege the administrative

[3] Defendants deny these allegations in their entirety and only present these allegations for the purposes of this Motion.

hearing was affected by technical difficulties preventing Birgy from presenting two material witnesses that deprived her of the opportunity to present materially significant evidence. *See Id.* at ¶¶ 196-197, 203. Plaintiffs also allege that an individual named Jean Marie Webster ("Webster"), who was a founding member and major benefactor of SPARC, personally appeared and spoke at the administrative hearing after learning Bruce may have originated at SPARC but did not represent SPARC or have the authority to do so. *See Id.* at ¶¶ 204-208.[4] On March 26, 2026, the administrative hearing officer issued the Order finding Bruce to be vicious and ordering his destruction. *See Id.* at ¶ 213. Plaintiffs allege the administrative hearing deprived them of constitutionally adequate processes before their interests in Bruce were extinguished. *See Id.* at ¶ 218.

Birgy appealed the Order to the Superior Court and a *de novo* review hearing was conducted on April 15, 2026. *See Id.* at ¶¶ 219-221. Plaintiffs allege the Superior Court hearing did not provide constitutionally adequate process since the Superior Court did not provide them sufficient time to present their evidence and denied their requests for an additional witness to appear and to re-open the proceedings. *See Id.* at ¶¶ 224, 229-239. After the conclusion of the hearing, the Superior Court issued an order finding Bruce to be vicious and that he be destroyed. *See Id.* at ¶ 241.

Plaintiffs ask the Court to issue a declaration that: (1) Defendants "administrative/enforcement process" violated their due process rights: (2) Defendants' "administrative-hearing, and enforcement procedures" failed to provide constitutionally adequate process; and (3) Defendants be prohibited from destroying

---

[4] Plaintiffs place considerable weight on Webster's lack of authority to speak on behalf of SPARC as evidence that SPARC's property interests in Bruce were not adjudicated. However, Plaintiffs present no authority suggesting Defendants were required to notify SPARC of the administrative hearing or confirm Webster was an authorized representative. Defendants further maintain that Plaintiffs' own contractual theory of privity suggests Birgy could represent SPARC's interests and Plaintiffs make no argument that Birgy failed to represent their property interests.

Bruce until Plaintiffs receive “constitutionally adequate process”. *See Id.* at pp. 53, ¶ 1, 54, ¶¶ 7-8. Plaintiffs also seek injunctive relief prohibiting Defendants from destroying Bruce until they receive “constitutionally adequate process” and relying on “constitutionally inadequate administrative or enforcement procedures” to destroy Bruce. *See Id.* at pp. 54, ¶ 10, 55, ¶ 56.

## III. MEET AND CONFER EFFORTS

On June 3, 2026, counsel for Defendants contacted Plaintiffs’ counsel to request her availability for a meet and confer teleconference to discuss the deficiencies with the FAC and the grounds for this Motion and whether she would be agreeable to an extension for Defendants’ responsive pleading deadline in anticipation of the Court’s ruling on the parties’ supplemental briefing. *See* Declaration of Thomas B. Livingston in Support of Defendants’ Motion to Dismiss FAC filed herewith (“Livingston Decl.”) at ¶ 2. On June 5, 2026, Plaintiffs’ counsel indicated she was available on Monday, June 8, 2026, at 12:30 p.m., and Defendants’ counsel sent a meeting invite thereafter. *See Id.* at ¶ 3.

On June 8, 2026, Defendants’ counsel attended the scheduled meeting and Plaintiffs’ counsel did not appear. *See Id.* at ¶ 4. Thereafter, Defendants’ counsel emailed Plaintiffs’ counsel to determine if she had availability later that day to participate in a teleconference. *See Id.* Plaintiffs’ counsel stated she was unable to attend the previously scheduled 12:30 p.m. meeting due to another meeting running over and indicated she was available the following morning. *See Id.* Defendants’ counsel again asked if she was available for a teleconference later that day and indicated his schedule was open. *See Id.* Plaintiffs’ counsel did not respond to Defendants’ counsel’s email. *See Id.*

On June 9, 2026, Defendants’ counsel sent another correspondence to Plaintiffs’ counsel requesting her availability to meet and confer that day despite the deadline passing the previous day. *See Id.* at ¶ 5. Plaintiffs’ counsel indicated she was available at 12:00 p.m. that day and Defendants’ counsel sent a meeting invite

thereafter. *See Id.* At 12:00 p.m., Defendants' counsel and Plaintiffs' counsel participated in meet and confer teleconference in which Defendants outlined their legal arguments for why the Court lacked subject matter jurisdiction over the claims and why the FAC failed to state a claim upon which relief could be granted. *See Id.* Defendants' counsel also outlined why these deficiencies could not be cured through subsequent amendment and requested that Defendants be dismissed from the FAC with prejudice. *See Id.* Plaintiffs' counsel did not respond to Defendants' legal arguments and was not willing to dismiss Defendants. *See Id.*

Because Plaintiffs are unwilling to dismiss Defendants from the FAC, Defendants are left with no choice but to proceed with the Motion.

## IV. LEGAL STANDARD

In responding to a pleading, the responding party must assert every defense to a claim either through a responsive pleading or by motion. Fed. R. Civ. P. 12(b). A motion asserting these defenses must be made before pleading if a responsive pleading is allowed. *Id.* Amongst the defenses that can be raised by motion include a defense that the Court lacks subject matter jurisdiction over the claims and that the pleading fails to state a claim upon which relief can be granted. *Id.* at 12(b)(1) & (6). This Motion is made pursuant to Rule 12(b)(1) & (6) based on the arguments set forth below.

## V. THE COURT LACKS SUBJECT MATTER JURISDICTION AS PLAINTIFFS' ALLEGATIONS CENTER ON STATE COURT ERROR AND THERE IS NO STATUTORY AUTHORITY CONFERRING JURISDICTION

Federal courts are of limited jurisdiction and they possess only that power authorized by the U.S. Constitution and by statute. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 376 (1994). Pursuant to 28 U.S.C. § 1257, final judgments or decrees rendered by the highest court in the state in which the decision could be had may be reviewed by the United States Supreme Court only. 28 U.S.C. §

1257(a). Consequently, federal courts may not entertain appeals of state court judgments; such appeals are considered forbidden de facto appeals over which District Courts lack subject matter jurisdiction, a principle known as the *Rooker-Feldman* doctrine. *Miroth v. County of Trinity*, 136 F.4th 1141, 1146 (9th Cir. 2025) (internal citations omitted). Specifically, the *Rooker-Feldman* doctrine holds that District Courts lack subject matter jurisdiction over cases where the federal plaintiff both asserts as their injury legal errors or errors by the state court and seeks relief from the state court judgment. *Id.* at 1151 (internal citations omitted). The *Rooker-Feldman* doctrine also holds that if issues presented in a federal suit are "inextricably intertwined" with issues presented in a forbidden de facto appeal from a state court decision, those intertwined issues may not be litigated. *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1142 (9th Cir. 2004) (internal citations omitted). However, the doctrine does not apply to cases alleging wrongful conduct by an adverse party leading to an erroneous state court judgment. *Miroth*, 136 F.4th at 1150 (internal citations omitted).

Several Ninth Circuit cases have held the *Rooker-Feldman* doctrine does not apply when the theory of relief rests on alleged impropriety committed by an adverse party that led to an erroneous state court judgment. In *Kougasian*, plaintiff alleged the defendants committed extrinsic fraud on the state courts in related suits by submitting a false declaration. *Kougasian* , 359 F.3d at 1139. In her request for relief, plaintiff did not seek to set aside the state court judgments and instead sought damages for based on the alleged wrongdoing of defendants. *Id.* The Ninth Circuit held the *Rooker-Feldman* doctrine did not apply since plaintiff alleged defendants' wrongful conduct influenced the state court decisions as opposed to alleging the decisions themselves were erroneous, and there were no issues with which the issues in the federal claims were inextricably intertwined within the meaning of *Rooker-Feldman*. *Id.* at 1141-43.

In *Benavidez*, the plaintiffs alleged the county defendant obtained a protective custody warrant and removed their minor children from their home to conduct



MK MANNING | KASS

medical examinations without discussing the medical examinations with the parents or at any point during the detention hearing to review the removal. *Benavidez v. County of San Diego*, 993 F.3d 1134, 1140 (9th Cir. 2021). Plaintiffs further alleged that prior to the detention hearing, the defendants submitted a report that did not contain any discussion of efforts to obtain their consent to conduct medical examinations, and failed to inform them of their right to be present at the medical examinations between the date of removal, the date of the hearing, and the subsequent issuance of the order in violation of county policy. *Id.* at 1140-41. The Ninth Circuit held the *Rooker-Feldman* doctrine did not bar the exercise of subject matter jurisdiction since plaintiffs' allegations were not a de facto appeal from the juvenile court order and instead were allegations that the misrepresentations by the County defendants violated their constitutional rights and caused the juvenile court to issue orders authorizing the medical examination. *Id.* at 1143. The Ninth Circuit further held that plaintiffs' allegations that they did not become aware of the medical examinations until after they took place thereby depriving them of the right to be present at the examinations and challenge the order in state court was evidence of extrinsic fraud committed on the court, not legal error. *Id.* at 1143-44.

The facts here are inherently distinct from those in *Benavidez* and *Koguasian* and make clear that Plaintiffs are seeking a reversal of the administrative hearing and Superior Court hearing. Both hearings will be analyzed separately.

**A. <u>VCAS March 2026 Hearing.</u>**

Plaintiffs allege a number of due process violations by Defendants that occurred when they surrendered Bruce to the VCAS pending a hearing. *See* ECF No. 18 at ¶¶ 110-139. Plaintiffs then allege that: (i) on March 11, 2026, a VCAS employee signed a petition to determine Bruce as vicious; (ii) Birgy never received VCAS' evidentiary packet for the petition; (iii) Birgy was not given adequate time to review evidentiary materials and prepare a response; (iv) an administrative hearing occurred on this petition on March 24 or 25, 2026, that was attended by Birgy; (v) Birgy was

unable to introduce two key witnesses due to technical issues with Zoom; and (vi) the administrative proceedings deprived them of adequate process before their property was destroyed. *See Id.* at ¶¶ 182-86, 193, 197, & 218.

Yet, there are no allegations how *Defendants'* conduct resulted in an erroneous ruling. Instead, Plaintiffs' allegations suggest the administrative agency itself deprived Plaintiffs of due process protection by being unable to introduce key witnesses at the hearing. However, even assuming these allegations are true, Plaintiffs present no factual allegations that Birgy or Webster were unable to question or cross-examine VCAS' witnesses, challenge the VCAS' evidentiary packet, or present oral argument. Similarly, even assuming that VCAS engaged in alleged impropriety leading to Bruce's detention, Plaintiffs make no allegations that they were unaware of what the administrative hearing was about or how these improprieties impacted the administrative hearing. This is clearly distinguishable from the defendant's conduct in *Benavidez* where the defendants failed to provide notice to plaintiffs about the medical examinations and submitted a report to the court that failed to mention whether they obtained plaintiffs' consent. There was no secret here that the administrative hearing concerned whether there was sufficient evidence to declare Bruce vicious. It was clear Birgy knew what this hearing was about as she had a list of witnesses to show why Bruce should not be declared vicious and actually attended the hearing. Plaintiffs make no allegation that Defendants submitted false evidence at the administrative hearing like the defendants in *Kougasian* or that Defendants prevented Plaintiffs from presenting their case. The fact that Plaintiffs emphasize the administrative process failed to provide constitutionally adequate opportunities to challenge the VCAS' evidence illustrate the alleged due process violations are inextricably intertwined with the administrative ruling. Thus, it is clear that Plaintiffs are challenging the administrative conduct and how it impacted the ruling.

**B. <u>Ventura County Superior Court April 15, 2026, Hearing</u>**

Plaintiffs allege they appealed the administrative hearing to the Superior Court

MANNING | KASS

and a *de novo* hearing was conducted on April 15, 2026. *See* ECF No. 18 at ¶¶ 219-221. Plaintiffs then allege the Superior Court committed a number of due process violations at the hearing by limiting their time to present evidence, not allowing them to present material witnesses and evidence, and denying their request for additional time to present a witness. *See Id.* at ¶¶ 219-221. Plaintiffs allege they do not plead these facts for the purpose of the Court to "decide whether [the Superior Court] correctly determined that Bruce was vicious" but to instead allege that the hearing did not cure the prior administrative-process defects and they were not provided constitutionally adequate process before Defendants sought to execute Bruce. *See Id.* at ¶¶ 219-221.

No matter how cleverly pled the factual allegations are, it is clear they all relate to misconduct by the Superior Court. There are no allegations that *Defendants* engaged in misconduct that directly impacted the Superior Court's ruling. Indeed, Plaintiffs make no allegations that Defendants presented fabricated evidence at the Superior Court hearing or that they engaged in other misrepresentations to the Superior Court unlike *Benavidez* and *Kougasian* where the allegations all centered on defendants' deceitful conduct affecting the outcome of the hearing. The allegations here relate to the Superior Court's alleged failure to allow Plaintiffs an opportunity to present evidence and denying their request for additional time to present evidence. Again, nothing in these allegations pertain to Defendants' conduct during the hearing or how any alleged misconduct impacted the Superior Court's ruling. Instead, it is evident Plaintiffs are alleging the Superior Court's errors led to their due process violations. These are the exact issues the *Rooker-Feldman* doctrine prohibits the Court from hearing, and it clear the Court lacks subject matter jurisdiction over the claims.

### C. <u>The California Food and Agriculture Code Provides the Exclusive Remedy for Appealing the VCAS Hearing.</u>

The California Food and Agriculture Code provides that after a hearing is conducted pursuant to § 31621 and a determination is made that the dog is potentially

MANNING | KASS

dangerous or vicious, the owner may appeal the decision **only** to the superior court in the jurisdiction where the hearing entity is located. Cal. Food & Agr. Code § 31622(a) (emphasis added). The court hearing the appeal shall conduct a hearing *de novo* and make its own determination as to potential danger and viciousness based on the evidence presented. *Id.* at § 31622(b) (italics added). Furthermore, the determination of the court hearing the appeal shall be **final** and **conclusive** upon all parties. *Id.* at § 31624 (emphasis added).

Here, it is clear Plaintiffs exhausted their right to appeal and the Superior Court's ruling is final, barring the Superior Court from retaining jurisdiction. There is no dispute Plaintiffs appealed the administrative order to the Superior Court. *See* ECF No. 18 at ¶¶ 219-221. There is also no dispute that the Superior Court conducted a de novo review in compliance with the California Food and Agriculture Code, and issued a ruling finding Bruce to be vicious. *See Id.* at ¶¶ 221 & 241. Thus, there is no dispute that Plaintiffs invoked their right to appeal to the only court maintaining jurisdiction over the administrative hearing and that the Superior Court issued a ruling that is final and conclusive on all parties. Consequently, Plaintiffs have no other avenue to appeal the decision, and there is no statutory basis for the Plaintiffs to bring these claims before the Court.

Even assuming the claims pertain solely to alleged due process violations, Plaintiffs present no argument for why the Court here has jurisdiction over these issues. As stated above, the Court lacks subject matter jurisdiction over the case since it pertains to allegations that the administrative agency and the Superior Court committed errors in issuing their respective rulings. In addition, California law makes clear the right to appeal is entirely statutory and subject to legislative control. *Anchor Marine Repair Co. v. Magnan*, 93 Cal.App.4th 525, 528 (Cal. Ct. App. 2001 (internal citations omitted). The California Food and Agriculture Code is unambiguous that the California Superior Court is the only court that has the statutory right to hear the appeal, and that its decision is final and conclusive on all of the parties. Even if the

MK MANNING | KASS

Superior Court's ruling could be appealed, Plaintiffs present no legal authority for why the appeal could be filed in federal court rather than the California Court of Appeal. As such, it is clear that any appeal would be under the exclusive jurisdiction of California, not the District Court.

## VI. THE FIRST AMENDED COMPLAINT CONTAINS NO COGNIZABLE OR PRACTICAL FORM OF RELIEF FOR THE COURT TO GRANT

The Court is authorized to dismiss a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face such that the factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint does not need detailed factual allegations, the plaintiff's obligation to provide the grounds for their entitlement to relief requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do. *Id.* (internal citations and quotations omitted). In the case of a request for declaratory relief, it can only serve as a remedy as opposed to an independent cause of action or theory of recovery under the Declaratory Judgment Act. *See Erickson-Hall Constr. Co. v. Scottsdale Ins. Co.*, 369 F.Supp.3d 1022, 1038 (S.D. Cal. Feb. 20, 2019); *see* 28 U.S.C. §§ 2201-2202. The Declaratory Judgment Act in itself does not confer subject matter jurisdiction. *Fid. & Cas. Co. v. Reserve Ins. Co.*, 596 F.2d 914, 916 (9th Cir.1979). To grant declaratory relief, the District Court must find an actual controversy that is definite and concrete, and real and substantial. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240–41 (1937).

Here, there are simply no cognizable theories of recovery the Court can grant based on the factual allegations alleged and the relief sought. As discussed above, there is no basis from which the Court has subject matter jurisdiction over these claims

MANNING | KASS

as Plaintiffs essentially seek to have the administrative and the Superior Court rulings overturned. This is illustrated by Plaintiffs' request for a declaration that Defendants' "administrative/enforcement" process violated their due process rights and that Defendants' "administrative-hearing, and enforcement procedures, as applied to Plaintiffs and Bruce, failed to provide constitutionally adequate process." *See* ECF No. 18 at pp. 53, ¶ 1, 54 ¶ 7. Plaintiffs further seek injunctive relief prohibiting Defendants from destroying Bruce until they receive constitutionally adequate process. *See Id.* at p. 54, ¶ 10. If the Court were to grant this requested relief, it would effectively invalidate both rulings by requiring the parties to have another hearing on the petition with "constitutionally adequate process" and prohibit Defendants from acting on the order. This is the exact type of claim prohibited under the *Rooker-Feldman* doctrine and makes clear the Court lacks any jurisdiction to even grant the requested relief. Plaintiffs' requested declaratory relief also provides no basis for federal jurisdiction over these claims under the Declaratory Judgment Act.

Notwithstanding the fact that the Court does not have federal jurisdiction over these claims, it is also unclear how the Court can even issue the requested relief against Defendants or how it even relates to legal rights between Defendants. As stated previously, Plaintiffs seek a declaration that Defendants "administrative/enforcement process violated or threaten to violate" Plaintiffs' rights. *See* ECF No. 18 at p. 53, ¶ 1. Yet, the "enforcement process" is not controlled by Defendants. While Plaintiffs allege Defendants failed to give notice of the administrative hearing or provide the evidentiary packet attached to the petition, there are no allegations that Defendants engaged in conduct during these hearings that deprived Plaintiffs of their rights. As such, the requested relief would not resolve any legal rights between the parties.

Similarly, Plaintiffs also seek declaratory relief regarding SPARC's property interests in Bruce and that these rights were not adjudicated at either hearing. *See Id.* at pp. 53, ¶¶ 2-3, 54 ¶¶ 4-6. Whether SPARC has property interests in Bruce and

whether these property interests were ever adjudicated has no effect on the legal rights or disputes between Plaintiff and Defendants. Moreover, this requested relief is non-sensical in this case as the legal claims pertain to due process violations committed by the administration and the Superior Court , not Defendants. As such, these forms of relief can only adjudicate Plaintiffs' legal rights to adequate due process from the administration and the Superior Court. This was the exact issue in *Nelson* where the Central District Court held the plaintiff's request for declaratory relief that he was a victim of one of the other defendant's conduct was not a cognizable legal theory since it concerned conduct committed by an entirely different party. *See Nelson v. Fraser*, 2020 WL 11626077 at * 1, 4 (C.D. Cal. Mar. 9, 2020). Whether SPARC has property interests in Bruce and whether these rights were adjudicated does not adjudicate any rights between the parties.

The practical effect of Plaintiffs' requested relief should also be considered. If the Court were to issue declaratory judgment that the proceedings and enforcement procedure failed to provide constitutionally adequate process, a number of different issues would follow: Would the Court have to explicitly invalidate the order? Would the Court have to prescribe new procedures for declaring a dog vicious in California? Would the Court have to effectively remand the case back to the administration or the Superior Court with instructions on how to conduct these proceedings? Would California law governing these types of proceedings be invalidated by the Court's ruling? These issues highlight the numerous practical hurdles the Court would have to overcome if it were to entertain Plaintiffs' requested relief in addition to the significant legal constraints noted above. As such, it is clear Plaintiffs have no cognizable legal theory upon which relief can be granted even assuming the veracity of the factual allegations.

## VII. <u>CONCLUSION</u>

For these reasons, it is clear the Court lacks subject matter jurisdiction to hear these claims and that the FAC fails to state a cognizable theory of relief for the Court



MANNING | KASS

to grant. It is also clear Plaintiffs cannot cure these deficiencies through amendment as no additional factual allegations can resolve the legal issues inherent within the claims themselves. Therefore, Defendants respectfully request the Court grant the Motion in its entirety without leave to amend and dismiss Defendants with prejudice.

DATED: June 15, 2026

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: */s/ Kelly Duncan*
Kelly Duncan
Thomas B. Livingston
Attorneys for Defendants
COUNTY OF VENTURA and
VENTURA COUNTY ANIMAL
SERVICES

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 801 S. Figueroa St., 15th Floor, Los Angeles, CA 90017-3012.

On June 15, 2026, I served true copies of the following document(s) described as **NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT TO DEFENDANTS VENTURA COUNTY AND VENTURA COUNTY ANIMAL SERVICES: MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as follows:

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Kelly A Duncan**
  Kelly.Duncan@manningkass.com,sandra.alarcon@manningkass.com
- **Christine Louise Kelly**
  christine@animalattorney.com
- **Thomas Livingston**
  thomas.livingston@manningkass.com,sandra.alarcon@manningkass.com
- **Marina Gatti Porche**
  marina.porche@ventura.org,clara.lascano@venturacounty.gov
- **Eugene P Ramirez**
  Eugene.Ramirez@manningkass.com,delia.flores@manningkass.com

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 15, 2026, at Los Angeles, California.

/s/ Sandra Alarcon
Sandra Alarcon

MANNING | KASS