Eugene P. Ramirez (State Bar No. 134865)
*eugene.ramirez@manningkass.com*
Kelly Duncan (State Bar No. 216181)
*Kelly.Duncan@manningkass.com*
Thomas B. Livingston (State Bar No. 335783)
*Thomas.Livingston@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St., 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants
COUNTY OF VENTURA and
VENTURA COUNTY ANIMAL
SERVICES

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| SANTA PAULA ANIMAL RESCUE CENTER, INC. AND CLAIRE BIRGY, THE GUARDIANS OF CANINE COMPANION BRUCE,<br><br>Plaintiff,<br><br>v.<br><br>VENTURA COUNTY, VENTURA COUNTY ANIMAL SERVICES, CITY OF OXNARD AND DOES 1-10,<br><br>Defendant. | Case No. 2:26-cv-05196-SPG-E<br><br>District Judge: Hon. Sherilyn Peace Garnett<br>Magistrate Judge: Hon. Charles F. Eick<br><br>**DEFENDANTS VENTURA COUNTY AND VENTURA COUNTY ANIMAL SERVICES' REPLY MEMORANDUM OF POINTS AND AUTHORITIES TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>[*Filed Concurrently with Request for Judicial Notice*]<br><br>Date: August 12, 2026<br>Time: 1:30 p.m.<br>Crtm.: 5C |

/ / /

/ / /

/ / /

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. THE MOTION DOES NOT CHALLENGE THE FACTUAL ALLEGATIONS AND ONLY CHALLENGES THE COURT'S JURISDICTION BASED ON THOSE FACTS ..... 2

III. SPARC WAS NOT REQUIRED TO RECEIVE NOTICE OF THE PETITION ..... 3

IV. *ROOKER-FELDMAN* STILL BARS THE CLAIMS AS SPARC WAS NOT REQUIRED TO RECEIVE NOTICE OF THE PETITION AND BIRGY SEEKS TO OVERTURN THE ORDER ..... 4

V. THE REMEDIES SOUGHT BY PLAINTIFFS LEAD TO THE SAME RESULT OF OVERTURNING THE STATE COURT DECISION BASED ON LEGAL ERROR ..... 10

VI. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Page**


**CASES**

*Benavidez v. County of San Diego*, 993 F.3d 1134, 1140-1141 (9th Cir. 2021) .......... 9

*Johnson v. De Grandy*, 512 U.S. 997, 1000 (1994) .......... 5

*Lance v. Dennis*, 546 U.S. 459, 460 (2006) .......... 5

*Lance*, 546 U.S. at 466, fn. 2 .......... 6

*Miroth v. County of Trinity*, 136 F.4th 1141, 1151-1152 (9th Cir. 2025) .......... 9

*T. M. v. University of Maryland Medical System Corp.*, 608 U.S. ___, ___n.4 (2026) .......... 4

*Verizon Maryland, Inc. v. Public Service Commission*, 535 U.S. 635, 643 (2002) .......... 8

*Verizon Maryland, Inc. v. Public Service Commission*, 535 U.S. 635, 644 fn. 3 (2002) .......... 7

**STATUTES**

28 U.S.C. § 1331 .......... 7

California Food and Agriculture Code §§ 31622(a)-(b) and 31624 .......... 8

Ventura County Ordinance Code § 4470-5(a) .......... 3

MK MANNING | KASS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' Opposition to Defendants County of Ventura (the "County") and Ventura County Animal Services ("VCAS") (collectively, the "Defendants") Motion to Dismiss the First Amended Complaint (the "FAC") attempts to persuade the Court that this action involves adjudication of constitutional property rights in Bruce rather than challenging the administrative order and subsequent *de novo* review by the Ventura County Superior Court (the "Superior Court"). More specifically, Plaintiffs argue the Santa Paula Animal Rescue Center, Inc. ("SPARC") never participated in either proceeding and, as a result, their property interests in Bruce were not adjudicated and they had no grounds to appeal the March 24, 2026, administrative hearing (the "administrative hearing"). Further, Plaintiffs argue Claire Birgy's ("Birgy") claims are wholly independent from what occurred during the administrative hearing and her appeal to the Superior Court heard on April 15, 2026, (the "*de novo* review") since the alleged wrongful conduct here occurred before and after these hearings.

These arguments fail for several reasons. First, Defendants were not required to give notice to SPARC of the administrative hearing under the California Food and Agriculture Code or the County of Ventura Ordinances. As such, SPARC's claim that they were required to receive such notice is irrelevant and is fatal to their position. Moreover, Plaintiffs present no allegations for why Birgy could not adequately represent SPARC's interests on appeal other than alleged error committed during the administrative hearing and the *de novo* review. Second, it is clear that the *Rooker-Feldman* doctrine is applicable here. While Plaintiffs argue that their complaints are centered on Defendants' alleged misconduct up to and after these hearings, they do not establish the nexus between this alleged misconduct and how it affected the outcome of these hearings, i.e. declaring Bruce vicious. Nowhere in the Opposition do Plaintiffs establish Defendants were responsible for how these hearings were

conducted that allegedly deprived them of the ability to have an adequate hearing or that they committed extrinsic fraud that affected the outcome of these hearings. Lastly, the relief sought by Plaintiffs make clear these orders would not only be invalidated, but that they would be invalidated on the basis that Plaintiffs did not receive adequate due process during either hearing that Defendants had no control over. This is the exact type of relief prohibited by the *Rooker-Feldman* doctrine. Thus, the Opposition does not establish any argument for why the Motion must be denied, and, as such, it must be granted in its entirety.

## II. THE MOTION DOES NOT CHALLENGE THE FACTUAL ALLEGATIONS AND ONLY CHALLENGES THE COURT'S JURISDICTION BASED ON THOSE FACTS

Plaintiffs first argue the Motion presents a facial challenge since Defendants do not dispute the FAC's "jurisdictional allegations," and, consequently, the Motion should be denied because the Court cannot "weigh competing evidence or resolve disputed jurisdictional facts." *See* ECF No. 27[1] at pp. 3, Lines 25-26 and 4, Lines 10-11. Plaintiffs further allege Defendants' arguments rest on factual disputes based on Defendants' alleged assertions that SPARC has not proved its retained rights, Birgy has not shown the procedural defects changed the outcome of the hearing, or that Plaintiffs have not established causation. *See Id.* at p. 5, Lines 22-25. This misrepresents what Defendants argued in the Motion. The Motion makes clear the FAC **does not allege facts** about how Defendants deprived Plaintiffs of their due process rights or presented false information that impacted the administrative and Superior Court orders. *See* ECF No. 23 at pp. 8, Lines 4-25, 9: 1-24.[2] Defendants do

[1] All references to "ECF No. 27" shall be in reference to Plaintiffs' Opposition to the Motion filed July 22, 2026, and the corresponding page(s) and line number(s).

[2] All references to "ECF No. 23" shall be in reference to the Motion filed by Defendants on June 15, 2026, and the corresponding line and page number.



MK MANNING | KASS

not contest these facts in the Motion and presented no evidence attempting to do so[3]. Thus, any argument that the Motion rests on factual disputes is false. Similarly, the Motion makes clear that, based on the facts alleged and the relief sought, the FAC fails to state a claim upon which relief can be granted since the Court lacks subject matter jurisdiction over the claims. To reiterate, the Motion does not attack the factual allegations or present evidence disputing those facts. Any argument that the Court is being asked to weigh facts when ruling on the Motion is without merit. Even if the Court is persuaded that sufficient facts are raised to make a plausible claim, the Motion makes clear it is made pursuant to Rule 12(b)(1) permitting the Court to dismiss the FAC for lack of subject matter jurisdiction. *See Id.* at p. 11, Lines 18-19. Thus, there is no argument the Motion should be denied on this basis.

## III. <u>SPARC WAS NOT REQUIRED TO RECEIVE NOTICE OF THE PETITION</u>

SPARC's central argument is that they were required to receive notice of the Petition as an interested party, and, because they were not participants in the Petition and the subsequent *de novo* appeal to the Superior Court, they cannot be bound by those decisions and their claims are focused solely on due process violations. However, the California Food and Agriculture Code and the Ventura County Ordinance Code specifies notice only needs to be provided to a dog's owner or keeper. Specifically, the California Food and Agriculture Code makes clear that notice only needs to be delivered to the owner **or** keeper of the dog. *See* Exhibit B attached to Defendants' Request for Judicial Notice (the "RFJN") filed herewith (emphasis added). Similarly, Ventura County Ordinance Code § 4470-5(a) provides that the owner **or** keeper of the dog shall be served with notice of the hearing and a copy of

[3] Defendants emphasize that they do not maintain or otherwise represent that the factual allegations in the FAC are true or accurate but only assume these facts for the purposes of the Motion.

the petition. *See* Exhibit A attached to the RFJN (emphasis added).

The FAC makes clear that at the time of the petition Birgy was an owner or keeper of Bruce. If Birgy were to plead otherwise, she would essentially concede that she has no claim against Defendants since she would have no property interests in Bruce whatsoever. Additionally, the FAC makes clear that Birgy attended the hearing on the Petition and does not otherwise contend she did not receive notice from the hearing, even if she alleges she did not receive the materials for the hearing. Thus, it is clear Bruce's owner or keeper received notice of the hearing. Nothing in either the California Food and Agriculture Code or the Ventura County Ordinance suggests all owners/keepers or potential owners/keepers of the dog need to be provided notice of the hearing. Consequently, SPARC's arguments that their claims are viable because of their lack of notice or participation in the Petition hearing has no merit.

## IV. ***ROOKER-FELDMAN*** **STILL BARS THE CLAIMS AS SPARC WAS NOT REQUIRED TO RECEIVE NOTICE OF THE PETITION AND BIRGY SEEKS TO OVERTURN THE ORDER**

Plaintiffs further rely on the argument that SPARC was not a party to the administrative hearing or the *de novo* appeal to argue the *Rooker-Feldman* doctrine is inapplicable. Notably, Plaintiffs rely on a footnote in the recently published U.S. Supreme Court decision in *T. M. v. University of Maryland Medical System Corp.*, 608 U.S. ___, ___n.4 (2026) (slip op., at 7 n.4) in which it affirmed that *Rooker-Feldman* is inapplicable in cases where the federal plaintiff was not a party to the state court case. More specifically, Plaintiffs rely on the holdings in *Johnson v. De Grandy* and *Lance v. Dennis* cited in that footnote in support of their position. As an initial matter, there is no basis for this argument as SPARC was not required to receive notice of the Petition and their participation at either hearing was unnecessary. Notwithstanding this argument, the cases cited by Plaintiffs do not support their position.

In *Johnson*, plaintiffs filed an initial complaint in District Court alleging the

districts from which Florida voters chose their representatives failed to reflect changes in Florida's population. *Johnson v. De Grandy*, 512 U.S. 997, 1000 (1994). Shortly after the complaint was filed, the Florida state legislature adopted a Senate Joint Resolution plan to reapportion these districts, and the attorney general then petitioned the Florida Supreme Court for declaratory judgment regarding the validity of the plan under federal and state law as required by Florida's state constitution. *Id.* at 1001. The Florida Supreme Court found the plan was valid but acknowledged they were unable to conduct a full review due to constitutional time constraints and recognized the right of interested parties to bring a challenge under the Voting Rights Act. *Id.* Thereafter, plaintiffs amended their complaint to challenge this plan which the Department of Justice also challenged and whose complaint was consolidated with plaintiffs. *Id.* at 1001-1002. The U.S. Supreme Court rejected defendant's argument that the *Rooker Feldman* doctrine barred the Department of Justice from pursuing its claims based on the outcome of the Florida Supreme Court's decision since they were not a party in the state court proceeding, it was in no position to ask the court to review the state court judgment and did not attack the judgment in its pleadings, and it sought to litigate its claims for the first time. *Id.* at 1005-1006.

In *Lance*, there were two initial lawsuits filed by the Colorado state attorney general and individual proponents seeking to enjoin the Colorado General Assembly's redistricting plan. *Lance v. Dennis*, 546 U.S. 459, 460 (2006). The lawsuit filed by the Colorado attorney general was heard before the Colorado Supreme Court who held the plan violated the Colorado state constitution, while the second lawsuit filed by the individual proponents was removed to federal court that contained counterclaims by defendants against the plaintiffs. *Id.* at 460-461. The District Court held defendants were barred from amending their counterclaims to assert additional challenges to the Colorado Supreme Court's decision under the *Rooker-Feldman* doctrine. *Id.* at 461. Before the second lawsuit was dismissed, a third lawsuit was filed in the District Court by different plaintiffs challenging the holding by the Colorado

Supreme Court seeking to utilize the legislature's redistricting plan, which the District Court held was barred by the *Rooker-Feldman* doctrine. *Id.* at 461-462. The U.S. Supreme Court held *Rooker-Feldman* did not bar the claims in the third lawsuit since the plaintiffs were not parties to the underlying state action brought by the state attorney general and were not in a position to ask the Court to review the decision. *Id.* at 465.

The case here is inherently distinct from those in *Johnson* and *Lance*. In each of those cases, the underlying actions that were sought to be used as a bar for pursuing claims under *Rooker-Feldman* involved mandatory action by the state in affirming the redistricting plan in *Johnson* or a separate lawsuit by a government entity in *Lance*. The case here involves a petition brought by the VCAS to declare Bruce vicious, which, the FAC alleges both Birgy and SPARC had property interests in. There is also no dispute the FAC alleges Birgy was Bruce's owner at the time of the Petition and received notice of the Petition. Although SPARC alleges they cannot be bound by the order in the Petition because they did not participate in the hearing and did not receive notice, there was no requirement for Defendants to provide notice to SPARC for the reasons discussed above. By having Birgy present at the hearing, it was clear SPARC's property interests in Bruce were represented. Even if there were some requirement that SPARC be able to access or participate in the hearing, it is clear they were able to do so here as demonstrated by the fact that Webster, a representative of SPARC, actually attended the hearing. . This is unlike *Johnson* or *Lance* where the plaintiffs had no legal avenue to participate in the proceedings that defendants attempted to utilize as a barrier to pursue their claims under the *Rooker-Feldman* doctrine. Thus, it is clear that the holdings in *Johnson* and *Lance* have no applicability to the facts here.

The holding in *Lance* also suggests there may be circumstances where the *Rooker-Feldman* doctrine applies in situations where a party was not named in the earlier proceeding. *See Lance*, 546 U.S. at 466, fn. 2: "[W]e need not address whether



MANNING | KASS

there are *any* circumstances, however limited, in which *Rooker–Feldman* may be applied against a party not named in an earlier state proceeding—e.g., where an estate takes a de facto appeal in a district court of an earlier state decision involving the decedent" (emphasis in original.)

A similar situation is applicable here. Both Birgy and SPARC maintained the same property interests in Bruce, and the Petition concerned whether there were grounds to declare Bruce vicious. As the California Food and Agriculture Code and the Ventura County Ordinance sections cited above make clear, SPARC was not required to be named as a party to the Petition or even be provided notice of the Petition since Birgy was still Bruce's owner. When Birgy appealed the administrative decision to the Superior Court, she was representing both hers and SPARC's property interests in Bruce. Nothing in the FAC suggests Birgy could not adequately represent their interests at the administrative hearing other than through alleged misconduct by the administration or why the same issues SPARC complains of could not be addressed by Birgy at the Superior Court hearing. Because Birgy appealed the administrative hearing to the Superior Court who affirmed the administration's ruling and the California Food and Agriculture Code makes clear the California Superior Court is the only court that can hear appeals of these types of administrative decisions, the *Rooker-Feldman* doctrine is clearly applicable here. Any doubt as to its applicability is resolved by the fact that Plaintiffs specifically seek to prohibit enforcement of the order, i.e. Bruce's destruction, until they receive adequate process. *See* ECF No. 18 at p. 54, ¶ 10.

Plaintiffs also rely on the argument that the Rooker-Feldman does not govern review of administrative and executive action, including determinations by a state administrative agency based on the holding in *Verizon Maryland, Inc. v. Public Service Commission*, 535 U.S. 635, 644 fn. 3 (2002). However, in *Verizon*, the U.S. Supreme Court explicitly held that plaintiffs' claims not only fell within 28 U.S.C. § 1331's grant of general jurisdiction, but that the controlling statute at issue granted

MANNING | KASS

the aggrieved party the right to bring action in appropriate federal court. *Verizon Maryland, Inc. v. Public Service Commission*, 535 U.S. 635, 643 (2002). The U.S. Supreme Court further held that even if the statute did not explicitly confer a private right of action for the claims at issue, the mere fact that some acts were made reviewable did not preclude other acts from being reviewable, like the claims at issue in this case. *Id.* at 643-644. The U.S. Supreme Court's reference to the *Rooker-Feldman* doctrine in fn. 3 was addressed for the purposes of rejecting the defendant's argument that the District Court lacked jurisdiction over the claims, particularly when the statute at issue made clear that state courts had no jurisdiction to hear the administrative decision. *Id.* at 644.

That is not the case here. As emphasized in the Motion, California Food and Agriculture Code §§ 31622(a)-(b) and 31624 specify that the superior court in the jurisdiction where the hearing entity is located is the only tribunal that can hear the appeal of the administrative decision. Nothing in the statute implies the District Court has jurisdiction over these claims or Plaintiffs would have a legal avenue to appeal these claims to the District Court. While Plaintiffs focus on the alleged due process violations that occurred prior to the administrative hearing to insulate their claims from what occurred at these hearings, they present no argument for why they, specifically, Birgy, could not raise these due process arguments on appeal or why the statute would prohibit her from raising these arguments on appeal. As such, any appeal concerning the conduct prior to the hearing on the Petition was subject to adjudication by the Superior Court.

Lastly, Plaintiffs' argument that allegations of extrinsic fraud are unnecessary to support their claims based on the holdings in *Miroth* and *Benavidez* are unpersuasive. In *Miroth*, the Ninth Circuit held the *Rooker-Feldman* doctrine did not apply to plaintiffs' allegations that defendants failed to develop a required safety plan to ensure they could retain custody and that defendants misrepresented facts to the state court since they were actions of misconduct by the litigations in obtaining a

judgment. *Miroth v. County of Trinity*, 136 F.4th 1141, 1151-1152 (9th Cir. 2025). Here, the alleged misconduct involved Defendants' failure to provide notice to SPARC of the Petition, allegedly obtaining Bruce without informed consent, failing to provide Birgy the evidentiary packet for the Petition hearing, and the administration failing to provide Birgy adequate time to present her case. Plaintiffs further allege Defendants continue to engage in misconduct by retaining Bruce.

First, as explained above, SPARC was not required to receive notice of the Petition. Thus, any alleged wrongdoing by Defendants with respect to notice procedures has no weight on how the orders in this case were tainted by their alleged misconduct. Second, even if Bruce was allegedly obtained under false pretenses, Plaintiffs do not explain how that impacted the administrative hearing or the subsequent *de novo* review of that hearing. The fact that the FAC alleges Birgy's husband contacted VCAS about the Petition and requested alternative housing for Bruce makes clear Birgy knew what the hearing was about and had notice of the hearing. *See* ECF No. 18 at ¶¶ 188-192. This is unlike *Benavidez* where the plaintiffs alleged the defendants did not provide notice of the administrative hearing or their right to be present during their children's medical examinations. *See Benavidez v. County of San Diego*, 993 F.3d 1134, 1140-1141 (9th Cir. 2021).

Third, whether any evidentiary packet was or was not received by Birgy or SPARC has no relevance on whether it impacted the administrative decision and subsequent *de novo* review. The FAC makes no allegations that this evidence was false and materially impacted the administrative decision and the de novo review. Similarly, the allegation that Birgy was not given adequate time to present her case at the administrative hearing similarly has no bearing on Defendants' alleged misconduct that impacted the respective orders. The FAC makes no allegation that Defendants controlled the administrative hearing including the alleged technical difficulties with the hearing. Instead, it is clear the hearing officer or other administrators were responsible for these issues. As such, the FAC does not establish

a nexus between Defendants' alleged misconduct leading up to the hearing and the conduct that actually occurred at these hearings that ultimately impacted the rulings at issue here. Even if such misconduct did impact the administrative hearing, the Superior Court was the sole court with jurisdiction to hear such claims. Lastly, any argument that Defendants' continued retention of Bruce is unlawful is simply without merit. Given Plaintiffs' entire argument rests on the theory that they do not seek to overturn the administrative order and Superior Court order and they present no authority suggesting Defendants cannot retain Bruce pursuant to these orders, this argument has no relevance on the applicability of the *Rooker-Feldman* doctrine.

In sum, it is clear the *Rooker-Feldman* doctrine is equally applicable to both Birgy and SPARC. SPARC was not required to be provided notice of the Petition as there is no dispute Birgy was notified of the hearing and attended it. The cases cited by Plaintiffs have no relevancy to the claims here as the facts do not show a nexus between how the alleged misconduct impacted the decisions at issue here. Further, it is clear the California Food and Agriculture Code provides explicit jurisdiction to the Superior Court to address these issues, including any alleged misconduct by Defendants leading up to the respective hearings. More importantly, since the FAC is bereft of any allegations that Defendants committed extrinsic fraud to the administration or the Superior Court that impacted those decisions, *Rooker-Feldman* is clearly applicable here and bars Plaintiffs from continuing to pursue their claims.

## V. THE REMEDIES SOUGHT BY PLAINTIFFS LEAD TO THE SAME RESULT OF OVERTURNING THE STATE COURT DECISION BASED ON LEGAL ERROR

The Opposition places considerable weight on the conduct leading up to the hearing on the Petition to argue that this case is about constitutional deprivations leading up to the Petition hearing and the subsequent de novo review rather than seeking to overturn those orders. But this ignores the practical implications of granting this relief. Plaintiffs seek declaratory relief that its administrative hearing and

enforcement procedures failed to provide them adequate notice and that Defendants cannot destroy Bruce until they receive constitutionally adequate process. *See* ECF No. 18 at p. 54, ¶¶ 7-9. Plaintiffs further seek injunctive relief to prohibit Defendants from destroying Bruce until they receive constitutionally adequate process and SPARC's rights are adjudicated, and from relying on constitutionally inadequate administrative and enforcement procedures before permanently extinguishing Plaintiffs' protected interests in Bruce. *See Id.* at pp. 54, ¶ 10, and p. 55, ¶ 16.

If the Court were to grant this relief, a necessary consequence would be to invalidate both the order in the Petition and the Superior Court's *de novo* review of that order. If the Court determined the processes were inadequate, the Parties would be required to conduct another hearing on the Petition that would render the prior orders unenforceable. This relief also turns on whether the administration that heard the Petition and determined there were grounds to declare Bruce vicious provided constitutionally adequate process to Birgy. Defendants were not the parties that conducted this hearing or made the final determination. Consequently, the effect of this relief would be to overturn an administrative decision that was later affirmed by the Superior Court. Even if Defendants allegedly engaged in conduct that deprived Plaintiffs of the ability to present an adequate defense prior to the administrative hearing, the FAC makes clear that Birgy received notice of this hearing and participated in it. Even assuming the hearing officer engaged in conduct that allegedly deprived Birgy of her constitutional rights, that conduct was not committed by Defendants. Furthermore, there are no allegations that any evidence presented to the administration or the Superior Court was fraudulent. As such, any ruling by the Court would have the effect of holding the administration committed error in its ruling. Similarly, in issuing a ruling that the *de novo* hearing similarly did not provide adequate process to Birgy or SPARC, it would not only invalidate the Superior Court's ruling, but it would also have the effect of holding that the Superior Court failed to provide constitutionally adequate due process. Again, this holding would

attack alleged error by the Superior Court, not Defendants misconduct. This is the exact type of relief barred by the *Rooker-Feldman* doctrine, and, as a result, the Court has no jurisdiction for issuing such relief.

Plaintiffs' requested injunctive relief also makes clear that the *Rooker-Feldman* is applicable here. By issuing injunctive relief that would force Defendants to rely on "adequate procedures" before exterminating Bruce, the order would essentially invalidate the administrative order and the Superior Court rulings by holding that they committed error in how these hearings were conducted. Although the Opposition attempts to argue that the alleged misconduct by the administrative officer and the Superior Court pled in the FAC is simply to counter Defendants argument that any administrative issues were cured during the *de novo* review, Plaintiffs ignore that this injunctive relief would have the practical effect of holding that the Superior Court's de novo review failed to provide adequate due process, not Defendants. Even assuming Defendants somehow controlled the administrative proceedings, the Superior Court retained sole jurisdiction to hear such arguments. By issuing an order that finds Plaintiffs did not receive adequate process during these hearings, it would necessarily hold the Superior Court committed legal error during the hearing. Any allegedly wrongful conduct committed by Defendants prior to these hearings has no relevance on the manner in which the Superior Court conducted its own hearing. Thus, no matter how cleverly Plaintiffs attempt to attenuate these proceedings from their claims, it is evident that they seek to overturn these rulings based on legal errors, not Defendants' conduct.

## VI. CONCLUSION

The foregoing makes clear the Opposition does not present any argument for why the Motion must not be granted in its entirety. SPARC was not required to receive notice of the Petition and no argument is presented for how Defendants' conduct led to error in either the administrative hearing or the *de novo* review. Furthermore, the relief sought by Plaintiffs rests on the finding that due process was not afforded to



MK MANNING | KASS

them in either the administrative hearing or the de novo review, which is clearly state court error and falls squarely within the type of relief prohibited under the *Rooker-Feldman* doctrine. Therefore, the Motion must be granted in its entirety without leave to amend.

DATED: July 29, 2026

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: *_/s/ Kelly Duncan_*
Kelly Duncan
Thomas B. Livingston
Attorneys for Defendants
COUNTY OF VENTURA and
VENTURA COUNTY ANIMAL
SERVICES

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 801 S. Figueroa St., 15th Floor, Los Angeles, CA 90017-3012.

On July 29, 2026, I served true copies of the following document(s) described as **DEFENDANTS VENTURA COUNTY AND VENTURA COUNTY ANIMAL SERVICES' REPLY MEMORANDUM OF POINTS AND AUTHORITIES TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT** on the interested parties in this action as follows:

The following are those who are currently on the list to receive e-mail notices for this case.

- **Dan C Bolton**
  dbolton@walterclark.com,kscott@walterclark.com,jgordon@walterclark.com
- **Walter T Clark**
  wclark@walterclark.com
- **Kelly A Duncan**
  Kelly.Duncan@manningkass.com,sandra.alarcon@manningkass.com
- **Christine Louise Kelly**
  christine@animalattorney.com
- **Thomas Livingston**
  thomas.livingston@manningkass.com,sandra.alarcon@manningkass.com
- **Marina Gatti Porche**
  marina.porche@ventura.org,clara.lascano@venturacounty.gov
- **Eugene P Ramirez**
  Eugene.Ramirez@manningkass.com,delia.flores@manningkass.com

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on July 29, 2026, at Los Angeles, California.

/s/ Sandra Alarcon
Sandra Alarcon

MK MANNING | KASS